# IN THE SUPREME COURT OF IOWA

No. 13–1238

Filed April 8, 2016

**STATE OF IOWA,**

Appellee,

vs.

**KEVIN DUANE FISHER II,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Johnson County, Stephen Gerard II, Judge.

A defendant challenges his guilty plea for failure to inform him of certain consequences of the plea. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AND SENTENCE VACATED AND CASE REMANDED.**

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Janet Lyness, County Attorney, and Elizabeth A. Beglin, Assistant County Attorney, for appellee.

**MANSFIELD, Justice.**

This case requires us to determine whether a defendant pleading guilty to a controlled-substance offense has a right to be informed beforehand that, as a result of the conviction, his driver's license will be revoked for 180 days. We conclude that because revocation is automatic, immediate, punitive, and a part of the sentencing order, the defendant has a right to be informed of this consequence. We further conclude that the defendant has a right to be informed of fine surcharges. Accordingly, we vacate the defendant's conviction and remand for further proceedings consistent herewith.

## I. Background Facts and Prior Proceedings.

According to the minutes of testimony, on April 11, 2013, Eric Seckel of the University of Iowa Police Department was performing a bar check in Iowa City. As he walked toward the back of the bar, he could smell the odor of marijuana. He made contact with Kevin Fisher and could smell a strong odor of burnt marijuana on his breath. When Fisher was asked if he had any marijuana on him, he handed Officer Seckel a cigarette box that contained a partially used joint. The joint contained marijuana.

On April 25, Fisher was charged with possession of a controlled substance first offense, a serious misdemeanor, in violation of Iowa Code sections 124.401(5) and 124.204(4)(*m*) (2013). Initially, Fisher pled not guilty and demanded a speedy trial. However, on June 17, the scheduled date of his pretrial conference, Fisher's counsel submitted a written guilty plea signed by Fisher. Among other things, the plea set forth the maximum punishment—six months—and the basic range of fines—$315 to $1875—for the offense. Additionally, it disclosed the constitutional rights that Fisher was waiving by pleading and not going to trial.

The actual plea agreement was handwritten into the signed form. It consisted of two days in jail, a $315 fine, substance abuse evaluation and treatment, and urinalysis within ten days.

In the plea form Fisher also acknowledged, in writing, as follows:

> I have been advised of my right to challenge this plea of guilty by filing a Motion in Arrest of Judgment at least five (5) days prior to the date that the Court sets for sentencing and within forty-five (45) days after the Court accepts my plea.

Fisher's counsel certified in the plea form that he had "carefully explained to the defendant the procedural steps of filing a Motion in Arrest of Judgment, the definition and grounds thereof and the time within which such Motion should be filed."

On that same day of June 17, the district court entered a written order accepting the plea and entering judgment and sentence. The order stated that the defendant was advised of his right to file a motion in arrest of judgment pursuant to the provisions of Iowa Rule of Criminal Procedure 2.24(3) and that "[t]he Defendant waives the right to have time prior to sentencing, waives the right to be present for sentencing, and requests the Court proceed to immediate entry of judgment and sentencing."

The ensuing judgment and sentence were consistent with the terms of the plea agreement. However, they also provided for several surcharges on top of the fine, including a thirty-five percent surcharge and a $125 law enforcement surcharge. Furthermore, the judgment and sentence stated that "[t]he Department of Transportation shall impose any suspensions or revocations of Defendant's driver's license or motor vehicle operating privilege as required by Iowa Code Chapter 321J, Iowa Code Section 901.5(10), or other applicable statute or rule."

On July 18, Fisher filed a notice of appeal. The district court appointed appellate counsel on October 2. This counsel subsequently filed a motion for leave to withdraw under Iowa Rule of Appellate Procedure 6.1005 on November 15.[1] We denied the motion because it failed to provide sufficient detail regarding the plea and sentencing proceedings. *See* Iowa R. App. P. 6.1005(2)(*a*).[2] Appellate counsel filed two more rule 6.1005 motions, both of which we denied for similar reasons. In our September 3, 2014 order denying appellate counsel's third and final rule 6.1005 motion, we removed this counsel for his repeated failure to comply with rule 6.1005. The counsel who is handling the present appeal was appointed on October 3.

Following briefing, we transferred the case to the court of appeals. On appeal, Fisher argued his written plea was defective because it failed to disclose the statutory minimum sentence of two days in jail, the mandatory six months' revocation of his driver's license, and the surcharges that were later added to his fine. *See* Iowa Code § 124.401(5); *id.* § 901.5(10); *id.* §§ 911.1.–.3. In addition, Fisher urged the court to bypass any error preservation concerns despite his failure to file a motion in arrest of judgment because the plea did not adequately

---

[1]Iowa Rule of Appellate Procedure 6.1005 sets forth the procedures that "apply when court-appointed counsel moves to withdraw on the grounds that the appeal is frivolous." Iowa R. App. P. 6.1005(1).

[2]Iowa Rule of Appellate Procedure 6.1005(2)(*a*) provides in part,

> If the appeal is from a guilty plea or sentence, the motion shall, at a minimum, address whether a factual basis existed for each and every element of the crime, whether the plea and sentencing proceedings substantially complied with the rules of criminal procedure, and whether the sentence was authorized by the Iowa Code, case law, or the rules of criminal procedure. The brief shall also contain citations to the record establishing each of the elements of the crime and establishing compliance with the rules of criminal procedure and the Iowa Code.

inform him that a failure to file a motion in arrest of judgment would foreclose his ability to challenge his guilty plea on direct appeal. Alternatively, Fisher argued that his counsel rendered ineffective assistance for failing file a motion in arrest of judgment.

In a September 23, 2015 decision, the court of appeals concluded "there was substantial compliance with the requirement Fisher be informed of the necessity of filing a motion in arrest of judgment in order to challenge his guilty plea," thus barring Fisher's direct appeal. The court also determined that Fisher's counsel was not ineffective for failing to challenge the alleged defects in the written plea. According to the court of appeals, Fisher "failed to show . . . he was unaware of the mandatory minimum sentence of two days in jail"; the surcharge did not "affect the range of Fisher's punishment"; and, "[t]he suspension of Fisher's driver's license was also a collateral consequence of his guilty plea." The court thus affirmed Fisher's plea and sentence.

Fisher applied for further review. We granted his application.

## II. Standard of Review.

We ordinarily review challenges to guilty pleas for correction of errors at law. *State v. Velez*, 829 N.W.2d 572, 575 (Iowa 2013).

## III. Analysis.

**A. Error Preservation.** We must first address whether Fisher can appeal his guilty plea despite not having filed a timely motion in arrest of judgment. Generally, "[a] defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude the defendant's right to assert such challenge on appeal." Iowa R. Crim. P. 2.24(3)(*a*). However, this rule does not apply to defendants who were not advised

> during the plea proceedings, as required by rule 2.8(2)(*d*), that challenges to the plea must be made in a motion in arrest of judgment *and that the failure to challenge the plea by filing the motion within the time provided prior to sentencing precludes a right to assert the challenge on appeal.*

*State v. Meron*, 675 N.W.2d 537, 540 (Iowa 2004) (emphasis added).

Iowa Rule of Criminal Procedure 2.8(2)(*d*) states,

> The court shall inform the defendant that any challenges to a plea of guilty based on alleged defects in the plea proceedings must be raised in a motion in arrest of judgment and that failure to so raise such challenges shall preclude the right to assert them on appeal.

Substantial compliance with rule 2.8(2)(*d*) is mandatory and "[n]o defendant . . . should suffer the sanction of rule [2.24(3)(*a*)] unless the court has complied with rule [2.8(2)(*d*)] during the plea proceedings." *State v. Worley*, 297 N.W.2d 368, 370 (Iowa 1980).

Fisher pled guilty to a serious misdemeanor, and in such proceedings it is "unnecessary . . . for the trial court to actually engage in an in-court colloquy with a defendant so as to personally inform the defendant of the motion in arrest of judgment requirements." *Meron*, 675 N.W.2d at 541. Instead, a written waiver filed by the defendant can be sufficient. *Id.* A defendant's written plea or waiver can foreclose an appeal when it complies with rule 2.8(2)(*d*). *See State v. Barnes*, 652 N.W.2d 466, 468 (Iowa 2002) (per curiam) (concluding that defendant failed to preserve error because he did not file a motion in arrest of judgment when his written plea clearly stated that a failure to file such a motion would bar any challenge to his plea on appeal). Yet regardless of whether the information is imparted through a colloquy or a written plea, the defendant must be made aware of the substance of rule 2.24(3)(*a*).

Fisher argues that the form he signed did not comply with this requirement. It set forth the right to challenge the plea by filing a motion

in arrest of judgment and, on a separate page, provided that Fisher was waiving this right, but it did not indicate that all avenues for challenging the plea were being cut off or mention the word "appeal" at all. *See State v. Loye*, 670 N.W.2d 141, 148 (Iowa 2003) ("The right to appeal is waived only if such a waiver is an express element of the particular agreement made by that defendant."); *State v. Hinners*, 471 N.W.2d 841, 845 (Iowa 1991) ("[T]he waiver of the right to appeal should be voluntary, knowing, and intelligent. This presupposes the defendant knows about the right of appeal and intentionally relinquishes it." (Citation omitted.)).

We have found sufficient compliance with the rule when the defendant was told that, if he requested immediate sentencing, his right to "question the legality of his plea of guilty" would be "gone." *State v. Taylor*, 301 N.W.2d 692, 692 (Iowa 1981). And in *State v. Oldham*, 515 N.W.2d 44, 46–47 (Iowa 1994), we found that a colloquy and a written application to withdraw the not-guilty plea—when considered together—sufficed "to notify Oldham of the consequences of his failure to file the motion [in arrest of judgment]." There the colloquy advised the defendant that he had the right to file a motion in arrest of judgment "if [he] claim[ed] that these plea proceedings [were] illegal" but such a motion had to be filed "at least five days before the time set for sentencing." *Id.* at 46. We viewed this advice alone as "equivocal with respect to the consequences of the defendant's failure to file a motion in arrest of judgment." *Id.* But the written application had added,

> I understand that if I wish to attack the validity of the procedures involved in the taking of my guilty plea, I must do so by a motion in arrest of judgment filed with this court. I understand that such motion must be filed at least five days before sentencing and also within 45 days of the date my plea of guilty is accepted by the court.

*Id.* Oldham had read and signed the application and we decided that when the application and colloquy were "considered together," he "was adequately informed of the necessity of filing a motion in arrest of judgment" and his failure to do so precluded his challenge to his plea on appeal. *Id.* at 47.

"We employ a substantial compliance standard in determining whether a trial court has discharged its duty under rule 2.8(2)(*d*)." *State v. Straw*, 709 N.W.2d 128, 132 (Iowa 2006). In *Straw* we found substantial compliance, noting,

> The court's statement plainly indicated that if Straw wanted to appeal or challenge the guilty plea, he had to file a motion in arrest of judgment. It also indicated this motion had to be filed not less than five days before sentencing. In whole, it conveyed the pertinent information and substantially complied with the requirements of rule 2.8(2)(*d*).

*Id.*

This case falls short of *Taylor* and *Oldham* and well short of *Straw.* Absent from Fisher's form was any statement that by signing it or proceeding to immediate sentencing, Fisher was giving up his ability to contest the plea in the future, even if the conviction resulted in consequences (as we discuss below) that Fisher may not have been told about before pleading guilty. It is true that counsel for Fisher certified in the plea form that he had explained the procedure for filing a motion in arrest of judgment to the defendant. However, "[e]ven considering the assurances that counsel for [the defendant] explained the right to file a motion in arrest of judgment, this guarantee would be insufficient to satisfy the second requirement of rule 2.8(2)(*d*)." *Meron*, 675 N.W.2d at 541.

On these facts, we cannot conclude that there was substantial compliance with the court's duty to inform Fisher that a failure to file a

timely motion in arrest of judgment would waive any challenge to his guilty plea on appeal. Because Fisher's written plea was deficient in this respect, he is not precluded from challenging his guilty plea on direct appeal.[3]

**B. Is the Loss of a Driver's License a Direct Consequence of Fisher's Guilty Plea?** Fisher argues his written guilty plea was invalid because he was not informed of three consequences of that plea: (1) the mandatory suspension of his driver's license for six months, (2) the fine surcharges, and (3) the mandatory minimum sentence of two days in jail. Rule 2.8(2)(*b*)(2) requires the court to

> address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . [t]he mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.

Iowa R. Crim. P. 2.8(2)(*b*)(2); *see also id.* r. 2.8(2)(*b*) (providing further that the court may "with the approval of the defendant, waive the above procedures in a plea of guilty to a serious or aggravated misdemeanor").

As with rule 2.8(2)(*d*), we utilize a substantial compliance standard to determine whether a plea crosses the rule 2.8(2)(*b*)(2) threshold. *See State v. White*, 587 N.W.2d 240, 242 (Iowa 1998). Both parties agree for purposes of this appeal that Fisher needed to be informed of all direct consequences of the plea in the colloquy or in any written waiver thereof. As we have said,

---

[3]Had the form substantially complied with rule 2.8(2)(*d*), Fisher would have to challenge his guilty plea under the rubric of ineffective assistance of counsel, which would require him, among other things, to demonstrate "a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Straw*, 709 N.W.2d at 138 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 210 (1985)).

> To the extent defendant alleges the sentencing court failed to inform him fully of the consequences of his plea, he implicates the due process clause of the Fourteenth Amendment to the United States Constitution. To adhere to the requirements of the Fourteenth Amendment a sentencing court must insure the defendant understands the direct consequences of the plea including the possible maximum sentence, as well as any mandatory minimum punishment. However, the court is not required to inform the defendant of all indirect and collateral consequences of a guilty plea.

*State v. Carney*, 584 N.W.2d 907, 908 (Iowa 1998) (per curiam) (citations omitted).

We begin with Fisher's assertion that the failure to inform him of the temporary revocation of his license rendered his plea defective. Iowa Code section 901.5(10) requires the sentencing court to "order the department of transportation to revoke the defendant's driver's license or motor vehicle operating privilege for a period of one hundred eighty days" when pronouncing a sentence for certain specified offenses, including possession of a controlled substance under section 124.401. We must determine whether this mandatory license suspension is a direct or a collateral consequence of a guilty plea for possession of a controlled substance.

In affirming Fisher's conviction and sentence, the court of appeals relied on our decision in *Carney.* There we determined that license revocation was "not a direct consequence of a guilty plea" to operating while intoxicated (OWI). *Carney*, 584 N.W.2d at 909. We distinguished between direct and collateral consequences of a plea by approvingly quoting the following language: "The distinction between 'direct' and 'collateral' consequences of a plea . . . turns on whether the result represents a definite, immediate and largely automatic effect on the range of defendant's punishment." *Id.* at 908 (quoting *State v. Warner*, 229 N.W.2d 776, 782 (Iowa 1975)). We reasoned that the purpose of

license revocation for those who had been convicted of OWI was "to protect the public by providing that drivers who have demonstrated a pattern of driving while intoxicated be removed from the highways." *Id.* at 909 (quoting *State v. Moore*, 569 N.W.2d 130, 132 (Iowa 1997)). In addition, we had previously ruled that license revocation as a consequence of an OWI conviction was "not punishment for purposes of the double jeopardy clause." *Id.*; *see State v. Krebs*, 562 N.W.2d 423, 424–25 (Iowa 1997) (per curiam). Accordingly, we concluded that revoking the driver's license of a person convicted of OWI was a collateral consequence because it was not intended as punishment. *Carney*, 584 N.W.2d at 909.

However, unlike *Carney*, this case involves revocation of a driver's license as a mandatory consequence of a *drug possession conviction*—not an OWI conviction. In this regard, we believe several pre-*Carney* decisions are relevant. In *Hills v. Iowa Department of Transportation*, 534 N.W.2d 640, 640–41 (Iowa 1995), Hills was charged with possession of marijuana under Iowa Code section 124.401(3), and she pled guilty three months after her arrest. During the time between Hills's arrest and her plea, Iowa Code section 321.209(8)—the former version of Iowa Code section 901.5(10)—went into effect. *Id.* at 641.[4] After the department of

---

[4]License revocation under the former Iowa Code section 321.209(8) was a separate administrative proceeding that took place after sentencing:

> The department shall upon twenty days' notice and without preliminary hearing revoke the license or operating privilege of an operator upon receiving a record of the operator's conviction for any of the following offenses, when such conviction has become final:
>
> . . . .
>
> 8. A controlled substance offense under section 124.401 . . . .

Iowa Code § 321.209(8) (1995).

transportation revoked her license, Hills argued on judicial review that the revocation of her license amounted to a violation of the ex post facto clauses of the Federal and Iowa Constitutions. *Id.*

In that case, we concluded that license revocation was an ex post facto violation because the sanction was punitive in nature. *Id.* at 642. In reaching this conclusion, we examined the connection between the crime of possession of a controlled substance and the revocation of the offender's drivers' license—i.e., whether the license revocation amounted to a civil penalty or criminal punishment. *Id.* We noted that, unlike in the context of an OWI conviction, the aim of ensuring public safety on the highways did not apply:

> Persons who illegally possess drugs are of course subject to appropriate criminal punishment. But many such persons choose not to drive. When they do not, they do not affect highway safety. Any connection between drugs, driving, and public safety is at most indirect. The amended statute authorizing this license revocation was aimed essentially at enhancing punishment for controlled substance possession. As such it was quasi-criminal and not civil in nature. Ex post facto principles therefore prohibit application of the amended statute.

*Id.*

After *Hills*, we decided *Dressler v. Iowa Department of Transportation*, 542 N.W.2d 563 (Iowa 1996). In that case, Dressler had pled guilty to possession of a controlled substance under Iowa Code section 124.401(3). *Id.* at 564. Shortly after his plea, the department of transportation commenced proceedings to revoke his driver's license for six months pursuant to former Iowa Code section 321.209(8). *Id.* Challenging the latter action, Dressler argued that section 321.209(8)

---

By contrast, Iowa Code section 901.5(10) (2013) provides that license revocation will be ordered by the court at the time of sentencing.

was unconstitutional because it imposed a successive punishment for the same conduct in violation of the Double Jeopardy Clause of the Fifth Amendment. *Id.* at 565. We agreed with Dressler:

> Our conclusion in *Hills* that section 321.209(8) enhances punishment of a controlled substance possession dispenses with the State's assertion that this section is not a penal statute. Because section 321.209(8) twice punishes Dressler for the same offense—possession of a controlled substance—in a separate proceeding, we conclude it unconstitutionally contravenes Dressler's double jeopardy guarantees.

*Id.*

Following the *Hills* and *Dressler* decisions, the general assembly amended the statute so it now provides that, as part of the criminal sentencing process, "the court shall order the department of transportation to revoke the defendant's driver's license or motor vehicle operating privilege for a period of one hundred eighty days . . . ." 1996 Iowa Acts ch. 1218, § 68 (codified at Iowa Code § 901.5(10)(*a*)). This takes care of the double jeopardy problem but does not alter our prior view that revoking the driver's license of a person convicted of a drug possession offense is a punitive rather than a regulatory consequence. As we previously said, "Any connection between drugs, driving, and public safety is at most indirect." *Hills*, 534 N.W.2d at 642.

Because revocation of the driver's license of a person convicted of a drug possession offense is mandatory, immediate, and part of the punishment for that offense, the court must inform the defendant of this consequence before accepting his or her plea. Here Fisher's written plea did not advise him that a guilty plea would result in the suspension of his license. We therefore find that the plea was involuntary and Fisher's conviction and sentence must be set aside. *See also Barkley v. State*, 724 A.2d 558, 560–61 (Del. 1999) (holding that a revocation of driver's

license based on a conviction for cocaine possession was "an immediate, automatic and mandatory penalty" that must be disclosed to the defendant before the defendant pleads guilty); *but see Rowell v. Commonwealth,* 647 A.2d 696, 698 (Pa. Commw. Ct. 1994) (finding that a license suspension based on a drug possession conviction was merely a "civil consequence" as opposed to a "criminal punishment" and therefore the trial judge did not have a duty to inform the defendant of this consequence before accepting a guilty plea).

**C. Are Fine Surcharges a Form of Punishment That Must Be Disclosed During Plea Proceedings?** We turn now to Fisher's assertion that the addition of surcharges to the fine for his conviction violated his right to be informed of the consequences of his guilty plea. The plea agreement stated that upon pleading guilty Fisher would be "fined at least $315.00 and up to $1,875.00." Fisher received the $315 minimum fine, but several surcharges were tacked on:

1. A thirty-five percent criminal penalty surcharge,

2. A drug abuse resistance education surcharge of $10, and

3. A law enforcement initiative surcharge of $125.

*See* Iowa Code §§ 911.1–.3. With these surcharges, the fine actually totaled $560.25.

As noted above, rule 2.8(2)(*b*)(2) requires the court to inform the defendant of the "mandatory minimum punishment" and the "maximum possible punishment" before accepting a guilty plea. These are considered direct consequences of the plea. *See Saadiq v. State,* 387 N.W.2d 315, 324–25 (Iowa 1986). The State does not dispute that the fine itself is a form of punishment which must be disclosed. *See State v. Brady,* 442 N.W.2d 57, 59 (Iowa 1989) (distinguishing fines and

restitution).[5]  However, it analogizes surcharges to court costs, which are not considered a form of punishment and do not need to be disclosed in advance of the plea.  *See id.* (holding that a failure to disclose mandatory payments that are compensatory rather than punitive did not vitiate a guilty plea).

We disagree with the State.  According to the plain language of the statute, the surcharge of thirty-five percent is a mandatory "additional penalty."  Iowa Code § 911.1(1).  Thus, it is punitive on its face.  The DARE surcharge of ten dollars lacks the same label but is nonetheless mandatory for controlled substance offenses.  *Id.* § 911.2(1).  The law enforcement initiative surcharge of one hundred twenty-five dollars is likewise mandatory for controlled substance offenses.  *Id.* 911.3(1)(*a*).

All of these surcharges can be distinguished from other court-ordered payments, such as restitution, court costs, and reimbursement for the cost of court-appointed counsel, which we regard as nonpunitive.  *See Brady*, 442 N.W.2d at 59.  The latter items are compensatory and "do[] not fit the generally understood definition of punishment."  *Id.*  By contrast, the surcharges do not serve as compensation but are simply what their title indicates—a "surcharge" on the fine.  For rule 2.8 purposes, we see no meaningful difference between a fine and a built-in

---

[5]Federal Rule of Criminal Procedure 11 expressly requires disclosure of "any maximum possible penalty, including . . . fine" as part of the guilty plea colloquy.  *See* Fed. R. Crim. P. 11(b)(1)(H).  Other states also require fines to be disclosed.  *See, e.g., Carter v. State*, 812 So. 2d 391, 394–95 (Ala. Crim. App. 2001) (reversing guilty plea where the defendant was not advised of "all the mandatory fines that were due to be imposed upon entry of his guilty plea"); *Kaiser v. State*, 641 N.W.2d 900, 904 (Minn. 2002) ("[D]irect consequences are those which flow definitely, immediately, and automatically from the guilty plea—the maximum sentence and any fine to be imposed." (quoting *Alanis v. State*, 583 N.W.2d 573, 578 (Minn. 1998), *abrogated in part on other grounds by Padilla v. Kentucky*, 559 U.S. 356, 365–66, 130 S. Ct. 1473, 1480–81, 176 L. Ed. 2d 284, 292–94 (2014))); *People v. Harnett*, 945 N.E.2d 439, 441–42 (N.Y. 2011) ("The direct consequences of a plea—those whose omission from a plea colloquy makes the plea per se invalid—are essentially the core components of a defendant's sentence: a term of probation or imprisonment, a term of post-release supervision, a fine.").

surcharge on a fine.  As the United States Court of Appeals for the Seventh Circuit has put it, "Labels don't control.  A fine is a fine even if called a fee . . . ."  *Mueller v. Raemisch*, 740 F.3d 1128, 1133–34 (7th Cir. 2014) (upholding the annual registration fee for the sex offender database because it was "intended to compensate the state for the expense of maintaining the sex offender registry").

The State insisted at oral argument that surcharges cannot be characterized as punishment because the funds collected—or at least some of them—are used for "remedial" purposes, such as crime and drug abuse prevention.  But the funds collected through regular fines themselves are used for similarly beneficent purposes.  They are deposited into the general fund which supports various state priorities including medical assistance and education.  *See* Iowa Code § 602.1305; *id.* § 602.8108.  This does not make them any less punitive.

As Fisher's counsel pointed out during oral argument, the surcharges made it effectively impossible that Fisher could ever actually be fined $315, the mandatory minimum listed on the plea form.  In fact, the actual dollar minimum was $560.25.  We conclude that Fisher should have been informed of the mandatory minimum and maximum possible fines, including surcharges.[6]

---

[6]Because we are vacating Fisher's plea and sentence and remanding for further proceedings anyway based on failure to disclose the mandatory license suspension, we need not decide today whether failure to disclose the surcharges *alone* would have meant the plea did not *substantially comply* with rule 2.8(2)(*b*)(2).  Regardless, we hold that *actual compliance* with rule 2.8(2)(*b*)(2) requires disclosure of all applicable chapter 911 surcharges.

Fisher also argues that his guilty plea was defective because he was not informed of the mandatory minimum of two days in jail.  We note, however, that in his plea agreement, Fisher agreed to two days in jail.

**IV. Conclusion.**

For reasons stated above, we vacate the decision of the court of appeals and the judgment and sentence imposed by the district court. We remand for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AND SENTENCE VACATED AND CASE REMANDED.**