# IN THE COURT OF APPEALS OF IOWA

No. 16-2019
Filed September 13, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DUSTIN TURNER LEE THORNBURG,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

The defendant appeals from his convictions following his guilty pleas to stalking and lascivious acts with a child. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

Dustin Thornburg appeals from his convictions following his guilty pleas to stalking and lascivious acts with a child, as an habitual offender.[1] Thornburg maintains neither his guilty pleas to stalking and lascivious acts with a child nor his admission to prior felonies were entered voluntarily and intelligently. He also claims there was not a factual basis to support his guilty plea for stalking.

**I. Background Facts and Proceedings.**

On December 30, 2015, the State filed a trial information charging Thornburg with two counts of second-degree sexual abuse (FECR374425). The allegations supporting the charges involved claims that Thornburg had sexually abused G.T., an eight-year-old child. The trial information was later amended to include the charge of lascivious acts with a child. It was alleged that Thornburg was an habitual offender.

The mother, Jennifer, obtained a no-contact order, preventing Thornburg from having any contact with her or G.T.

Between January 2016 and June 2016, Jennifer had a number of instances where someone attempted to gain entry into her various accounts, including her phone and her social media. She received a number of phone calls from blocked numbers that left no messages or—when she did answer—where no one spoke to her. She also received text messages from various numbers she did not recognize. The substance of some of the messages indicated the

---

[1] Thornburg also entered a guilty plea for assault by use or display of a dangerous weapon. He was convicted of the crime and sentenced to a term of incarceration. In his appellate brief, Thornburg states that he appeals from that conviction. However, he has not made a claim of error relating to it. As such, his conviction and sentence for assault by use or display of a dangerous weapon is affirmed.

sender could see Jennifer, including times the sender asked who she had been speaking with directly after she hung up from a phone call or times that the sender stated they were close by and told her a location that was, in fact, near where she then was. Jennifer recognized some of the speech patterns or statements as ones Thornburg had made to her in the past, and she believed it was Thornburg who was behind all of the contact. Other instances that could be traced back to Thornburg included a time when Jennifer spoke to her mother about G.T. struggling at softball, and within an hour, Thornburg had ordered G.T. a new bat to be delivered to Jennifer's previous home.[2] Additionally, Jennifer once met with Thornburg's brother and rode with him in his car, Thornburg—driving his sister's vehicle—chased them, attempted to hit their car, and tried to force them off the road. He only stopped after one of the tires on his sister's vehicle went flat.[3]

A second trial information was filed, and Thornburg was charged with stalking and assault by use or display of a dangerous weapon (FECR377209).

In September 2016, a jury trial on the charges of stalking and assault commenced. On the third morning of trial, Thornburg reached a plea agreement with the State. Thornburg entered guilty pleas to stalking and lascivious acts with a child, as an habitual offender. He also pled guilty to assault with a dangerous weapon. The State dismissed both counts of sexual abuse in the second

---

[2] Thornburg's address was used as the billing address in the purchase.

[3] Jennifer called 911 twice during the pursuit. She reported Thornburg was following them, that he had a flat tire, and that he was both trying to hit them and force them off the road. An independent witness called 911 and made a corroborating report stating that she saw a white male in a red or maroon car that ran a white car off the road into the ditch. Police officers were later able to run the plates on the red car and determine that it was registered to Thornburg's sister, but no officer personally witnessed Thornburg driving the car.

degree. Additionally, Thornburg agreed the sentence from FECR374425 would run consecutive to the sentences from FECR377209. Thornburg was sentenced pursuant to the agreement at a later date.

He appeals.

## II. Discussion.

### A. Rule 2.8(2)(d).

It is undisputed Thornburg did not file a motion in arrest of judgment. However, Thornburg maintains he may raise challenges to his guilty pleas on appeal because the district court failed to comply with advising him of the necessity of filing such a motion, thereby "reinstat[ing] the defendant's right to appeal the legality of his plea." *State v. Oldham*, 515 N.W.2d 44, 46 (Iowa 1994).

Iowa Rule of Criminal Procedure 2.8(2)(d) requires the court to "inform the defendant that any challenges to a plea of guilty based on alleged defects in the plea proceedings must be raised in a motion in arrest of judgment and that failure to so raise such challenges shall preclude the right to assert them on appeal." Here, the court advised Thornburg:

> [I]f you think I made a mistake in accepting these guilty pleas, or you want to withdraw them, you have to file a legal motion called a motion in arrest of judgment. The motion would have to have certain legal grounds that you would go over with your attorneys. However, it has time periods. It has to be on file within 45 days of today's date, and no later than five days before the date I've just set for your sentencing. If you had any questions about the motion in arrest of judgment rights, then I know your attorneys could answer them for you.

Thornburg claims this recitation failed to substantially comply with the court's duty to inform him that a failure to file a timely motion would waive any challenge to his guilty plea on appeal. *See State v. Fisher*, 877 N.W.2d 676, 681 (Iowa

2016) ("We employ a substantial compliance standard in determining whether a trial court has discharged its duty under rule 2.8(2)(d)."). We disagree; the court's statement substantially complied with the rule. *See, e.g.*, *State v. Thompson*, No. 14-0561, 2016 WL 6902318, at *1 (Iowa Ct. App. Nov. 23, 2016) (finding substantial compliance when "[t]he district court explicitly told [the defendant] if he 'would ever want to challenge' his guilty plea, he would have to timely file a motion in arrest of judgment. The district court's use of the word 'ever' communicated to the defendant 'all avenues for challenging the plea were being cut off'" (citation omitted)); *State v. Demey*, No. 16-0109, 2016 WL 4384978, at *1 (Iowa Ct. App. Aug. 17, 2016) (finding substantial compliance when the court informed the defendant, "So if you want to file a motion in arrest of judgment to take your plea of guilty back, you've got to make that filing by the 18th of November. And if you do not, then you would never have a chance to take your plea of guilty back").

While the court did not use the specific words "appeal" or "waive," the court's plain-language explanation informed Thornburg that he had only a limited time to point out any mistakes the court may have made in accepting his guilty pleas and that, in order to do so, he had to file the motion. *See State v. Straw*, 709 N.W.2d 128, 132 (Iowa 2006) (noting "the court performed its duty commendably by using plain English to explain the motion in arrest of judgment"); *see also State v. Taylor*, 301 N.W.2d 692, 693 (Iowa 1981) (finding the court's failure to explain procedural details "does not vitiate the defendant's understanding that [failing to file the motion in arrest of judgment] would foreclose a subsequent challenge to the validity of his guilty plea").

Because the court substantially complied with its duty to inform Thornburg of the necessity of filing a motion in arrest of judgment and Thornburg failed to file the motion, he cannot directly challenge his guilty pleas.

**B. Ineffective Assistance.**

Thornburg's failure to file a motion in arrest of judgment does not prevent him from challenging his guilty pleas "under the rubric of ineffective assistance of counsel." *Fisher*, 877 N.W.2d at 682 n.3. Here, Thornburg has only alleged trial counsel was ineffective for failing to file a motion in arrest of judgment challenging his guilty plea for one of his convictions—namely, his stalking conviction. Thornburg claims his trial counsel provided ineffective assistance for failing to challenge the lack of factual basis to support Thornburg's guilty plea for stalking and for failing to ensure the plea was voluntarily and intelligently entered.

*1. Factual Basis.* We can consider Thornburg's claim there was not a factual basis on direct appeal because when there is not a factual basis to support the plea, counsel has breached an essential duty and prejudice is inherent. *See State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014). In considering whether a factual basis supports Thornburg's guilty plea for stalking, "we consider the entire record before the district court at the guilty plea hearing, including any statements made by the defendant, facts related by the prosecutor, the minutes of testimony, and the presentence investigation report." *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). Additionally, here, Thornburg entered his guilty plea on the morning of the third day of trial, and we will consider the testimony already heard as well. *See State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013) ("On a claim that a plea bargain is invalid because of a lack of

accuracy on the factual basis issue, the entire record before the district court may be examined."); *see also State v. Dixon*, 14-1211, 2015 WL 3624383, at *3 (Iowa Ct. App. June 10, 2015) (considering the testimony heard at trial in evaluating whether there was a factual basis when the defendant entered her plea after the trial began). "Our cases do not require that the district court have before it evidence that the crime was committed beyond a reasonable doubt, but only that there was be a factual basis to support the charge." *Finney*, 834 N.W.2d at 62.

Thornburg challenges the factual basis for the determination he engaged in a "course of conduct," as defined by Iowa Code section 708.11(1)(b) (2016). A "'[c]ourse of conduct' means repeatedly maintaining a visual or physical proximity to a person without legitimate purpose or repeatedly conveying oral or written threats, threats implied by conduct, or a combination thereof, directed at or toward a person." Iowa Code § 708.11(1)(b). The statute further defines "repeatedly" as "on two or more occasions." *Id.* § 708.11(1)(d). Thornburg maintains the record only establishes a single act supporting the stalking charge. Specifically, the day he engaged in a car chase of Jennifer and his brother and attempted at different times during the pursuit to hit their car and force it off the road. As the State notes, the events took place on a number of different roads, had at least one break when Thornburg turned off onto a different road and ceased following them for a short while before finding their vehicle again later, and lasted long enough that Jennifer made more than one call to 911 for help. The car chase in and of itself could be a "course of conduct." Moreover, Thornburg admitted he placed a GPS tracking device on Jennifer's car. We believe such an act constitutes a "threat implied by conduct." Additionally,

Jennifer testified about receiving text messages from an unknown number that stated she was being watched and also suggesting the sender would be near her soon[4]; the sender sometimes described to Jennifer actions she had just completed. Circumstantial evidence—the reference to Jennifer's favorite football player and the sender's use of phrases Jennifer recognized Thornburg had used in the past—led Jennifer to believe it was Thornburg sending the texts, which she also understood to be threats.

The record contains evidence of a factual basis to support Thornburg engaged in a course of conduct—more than a single instance—of stalking. This claim of ineffective assistance fails.

*2. Voluntary and Intelligent.* We are unable to decide Thornburg's claim trial counsel was ineffective for failing to ensure his plea was intelligent and voluntary. In order to establish that counsel was ineffective, Thornburg is required to demonstrate, among other things, "a reasonable probability that, but for counsel's error, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Fisher*, 877 N.W.2d at 682 n.3 (alteration in original). Thornburg claims as much here, stating "he would not have gone forward with his plea even if the court had adequately advised him of the nature of the crime." As is usually the case on direct appeal, the record before us is inadequate to determine the validity of Thornburg's assertion. *See State v. Delacy*, No. 16-0827, 2017 WL 1735684, at *4 (Iowa Ct. App. May 3, 2017) (en banc) (finding a defendant's claim he would have insisted on going to trial cannot be decided on

---

[4] One text message stated, "Are you going to introduce me to your friend or what? I guess I have to break the ice and just come in," while another one stated, "I'll be seeing you both shortly. It's going to be awesome. Just wait."

direct appeal even though "it is tempting to conclude there is no reasonable probability [the defendant] would have insisted on going to trial in light of the substantial reduction in the amount of prison time and fines the plea agreement offered compared to the charges the State filed" because "circumstances underlying the prosecution's motivation for the plea offer and the defendant's willingness to go to trial are facts that should be permitted to be more fully developed"). "In cases such as this, where a defendant claims counsel was ineffective in failing to ensure he was properly informed of the consequences of his guilty plea, we determine a defendant should be given the opportunity to develop a record in postconviction-relief proceedings to support his ineffective-assistance claim." *Id.*

### C. Habitual Offender.

Finally, Thornburg maintains the district court failed to ensure his admissions of his two prior felony convictions were made voluntarily and intelligently. Thornburg cites to a recent supreme court case, *State v. Harrington*, 893 N.W.2d 36, 41 (Iowa 2017), to support his claim. In *Harrington*, our supreme court held that the court accepting the defendant's admissions must inform the defendant of certain rights he is waiving by making the admissions. 893 N.W.2d at 46 (referencing Iowa R. Crim. P. 2.8(2)(b)(4)). Additionally, the court must inform the offender "prior felony convictions are only valid if obtained when the offender was represented by counsel or knowingly and voluntarily waived the right to counsel." *Id.* at 45. Here, Thornburg tries to convince us that *Harrington* must be applied retroactively; *Harrington* was decided on April 7, 2017, while Thornburg pled guilty and made admissions regarding his prior convictions in

September 2016. But our supreme court explicitly stated that the ruling applied only prospectively. *Id.* at 43. Moreover, even if the ruling was to apply retroactively, the court's ruling that a motion in arrest of judgment is necessary to preserve a claim of error would prevent us from considering Thornburg's claim. *Id.* at 43.

Thornburg maintains that the need to file a motion in arrest of judgment applies prospectively while the court's requirement to establish that the admissions were knowing and voluntary was already in place. And while Thornburg is correct that case law already established the court's duty to do so, *see State v. Kukowski*, 704 N.W.2d 687, 692 (Iowa 2005), the manner in which it was to be accomplished has been further clarified and solidified by *Harrington*, and those changes apply prospectively. *See Harrington*, 893 N.W.2d at 48 (Mansfield, J., dissenting) ("Although the court's opinion offers a reasonable way to approach the habitual offender enhancement colloquy *in the future*, it differs from the approach required by our current rules and precedent."); *see also State v. Wade*, 16-0867, 2017 WL 2181450, at *4 (Iowa Ct. App. May 17, 2017) (refusing to apply new requirements of how colloquy is completed retroactively because "[t]he rules, which specify how a court should conduct a habitual offender colloquy, appear to be procedural in nature, and we determine they should not be applied retroactively to this case"). Moreover, here, Thornburg admitted to his prior felony convictions directly after pleading guilty, and the court substantially complied with Iowa Rule of Criminal Procedure 2.8(2)(b) when we consider the entire plea colloquy. *See Wade*, 2017 WL 2181450, at *5. Even without the benefit of *Harrington*, the only defect we have found in the colloquy is

the court's failure to inform Thornburg that his previous convictions are only valid for the purposes of the habitual-offender enhancement if he was represented by counsel at the time or had knowingly and voluntarily waived the right to counsel. We note that Thornburg has not asserted his prior felony convictions occurred without the representation of counsel, either in open court at the time of his admissions or on appeal. *See Kukowski*, 704 N.W.2d at 692 ("If the defendant denied 'being the person previously convicted,' or asserts that his prior convictions were obtained without counsel and counsel was not waived, then the case proceeds to the second trial.").

Thornburg's admissions to his prior felony convictions were knowing and voluntary; this claim of error fails.

**III. Conclusion.**

Because the district court substantially complied with its duty to inform Thornburg of his need to file a motion in arrest of judgment to challenge his guilty pleas and Thornburg failed to file the motion, we do not consider his claims of alleged errors involving the court's acceptance of his pleas. Additionally, the procedure used by the district court in accepting Thornburg's admission of two previous felony convictions was not deficient. Finally, we preserve for further development of the record Thornburg's claim that counsel was ineffective for failing to file a motion to challenge whether his guilty plea to stalking was voluntarily and intelligently made. We affirm.

**AFFIRMED.**