CLERK OF SUPREME COURT

MAY 03, 2017

ELECTRONICALLY FILED

**IN THE COURT OF APPEALS OF IOWA**

No. 16-1112
Filed May 3, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JASON GENE WEITZEL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Floyd County, Peter B. Newell, District Associate Judge.

        A defendant seeks to vacate his guilty pleas due to the district court's failure to conduct a plea colloquy in compliance with Iowa Rule of Criminal Procedure 2.8(2)(b)(2). **CONVICTIONS AND SENTENCES VACATED AND REMANDED.**

        David A. Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles City, for appellant.

        Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant Attorney General, for appellee.

        Considered En Banc.

**MCDONALD, Judge.**

In *State v. Fisher*, 877 N.W.2d 676, 686 n.6 (Iowa 2016), the supreme court held actual compliance with Iowa Rule of Criminal Procedure 2.8(2)(b) required the district court to disclose to the defendant during a plea proceeding "all applicable chapter 911 surcharges" related to the offenses to which the defendant pleaded guilty. *Fisher* left unresolved the question of whether the district court's failure to disclose to the defendant all applicable chapter 911 surcharges, standing alone, would mean the guilty plea proceeding failed to substantially comply with Rule 2.8(2)(b)(2). *See* 676 N.W.2d at 686 n.6. This appeal directly presents the question left unresolved in *Fisher*.

I.

Jason Weitzel pleaded guilty to and was convicted of domestic-abuse assault, in violation of Iowa Code section 708.2A(5) (2016); possession of methamphetamine, second offense, in violation of section 124.401(5); carrying weapons, in violation of section 724.4(1); and operating while intoxicated (OWI), first offense, in violation of section 321J.2. The underlying offense conduct is immaterial to the question presented, and we need not discuss it. The only material facts relate to the plea colloquy, and on this we focus our attention.

Weitzel was represented by counsel during the plea proceeding. During the plea proceeding, the district court informed Weitzel of the minimum and maximum fines applicable to each offense. The district court also determined Weitzel understood the minimum and maximum fines applicable to each offense. The district court did not inform Weitzel of the criminal surcharge penalty applicable to each offense. Iowa Code section 911.1(1) provides a "criminal

penalty surcharge shall be levied against law violators as provided in this section." The "additional penalty" shall be "in the form of a criminal penalty surcharge equal to thirty-five percent of the fine . . . imposed." Iowa Code § 911.1(1). Where, as here, the defendant is convicted of multiple offenses, "the surcharge shall be based upon the total amount of fines or forfeitures imposed for all offenses." Iowa Code § 911.1(2). The district court also did not determine whether Weitzel understood he would be subject to an "additional penalty" as set forth in code section 911.1.

## II.

On appeal, Weitzel seeks to vacate his convictions on the ground the plea proceeding was inadequate. Weitzel did not file a motion in arrest of judgment to challenge the adequacy of the plea proceeding. Typically, "[a] defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude the defendant's right to assert such challenge on appeal." Iowa R. Crim. P. 2.24(3)(a). This procedural bar is inapplicable, however, where the district failed to comply with Rule 2.8(2)(d) and inform the defendant of the need to file a motion in arrest of judgment to challenge the adequacy of the plea proceeding and the consequences for failing to file a motion in arrest of judgment. *See* Iowa R. Crim. P. 2.8(2)(d) ("The court shall inform the defendant that any challenges to a plea of guilty based on alleged defects in the plea proceedings must be raised in a motion in arrest of judgment and that failure to so raise such challenges shall preclude the right to assert them on appeal."); *State v. Worley*, 297 N.W.2d 368, 370 (Iowa 1980) (holding defendant should not "suffer the sanction of rule [2.24(3)(a)] unless the court has complied with rule

[2.8(2)(d)] during the plea proceedings by telling the defendant that he must raise challenges to the plea proceeding in a motion in arrest of judgment and that failure to do so precludes challenging the proceeding on appeal").

We conclude Weitzel is not barred from challenging the adequacy of his plea proceeding on direct appeal. The State concedes the district court did not advise the defendant as required by Rule 2.8(2)(d). Relying on *State v. Oldham*, 515 N.W.2d 44, 47 (Iowa 1994), the State contends the district court nonetheless substantially complied with Rule 2.8(2)(d) because the required advisory was contained in a change of plea form filed after the district court accepted the defendant's guilty plea. *See* 515 N.W.2d at 47 (holding the district court substantially complied with Rule 2.8(2)(d) where the defendant signed a form containing the required advisory and was asked during the plea colloquy whether he read and understood the form). *Oldham* is inapplicable here. There is nothing in the record to establish Weitzel was given the form, read the form, or understood the form prior to pleading guilty. On this record, we cannot conclude the district court substantially complied with Rule 2.8(2)(d). *See Fisher*, 877 N.W.2d at 682 (finding because advisory was deficient, defendant was not precluded from directly challenging guilty plea on appeal). Accordingly, Weitzel may directly challenge his guilty plea on appeal.

## III.

We begin by clarifying the nature of the claim presented. Due process requires a guilty plea be voluntary. *See State v. Loye*, 670 N.W.2d 141, 150 (Iowa 2003). "To be truly voluntary, the plea must not only be free from compulsion, but must also be knowing and intelligent." *Id.* at 151. Due process

requires the defendant to have an understanding of "the constitutional protections that he gives up by pleading guilty, . . . 'the nature of the crime with which he is charged,' and the potential penalties." *Id.* (citation omitted).

Iowa Rule of Criminal Procedure 2.8(2)(b), like Federal Rule of Civil Procedure 11, is a prophylactic rule designed to protect the constitutional right to due process during plea proceedings. *See United States v. Adams*, No. 98-2067, 1999 WL 1253080, at *2 (6th Cir. 1999) ("The federal courts have enforced the provisions of Rule 11 as a prophylactic measure against such due process violations."); *United States v. McDonald*, 121 F.3d 7, 11 (1st Cir. 1997) ("To this end, Rule 11 has a predominantly prophylactic purpose.").

In *McCarthy v. United States*, 394 U.S. 459 (1969), the Supreme Court explained the prophylactic purpose of the parallel federal rule of criminal procedure:

> First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.
> . . . .
> These two purposes have their genesis in the nature of a guilty plea. A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.
> . . . .

> To the extent that the district judge thus exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary. Both of these goals are undermined in proportion to the degree the district judge resorts to "assumptions" not based upon recorded responses to his inquiries. For this reason, we reject the Government's contention that Rule 11 can be complied with although the district judge does not personally inquire whether the defendant understood the nature of the charge.

*McCarthy*, 394 U.S. at 465–67. The same considerations inform our understanding of the purposes of Rule 2.8(2)(b).

Although due process concepts are protected by the rule, a due process challenge to a guilty plea is separate and distinct from a rule-based challenge to the adequacy of a plea proceeding. A due process claim challenges whether the guilty plea was actually voluntarily, knowingly, and intelligently made. *See State v. Finney*, 834 N.W.2d 46, 58 (Iowa 2013) (explaining the difference between a due process challenge to a guilty plea and a challenge to the adequacy of the plea proceeding). The object of the inquiry is the defendant's subjective understanding of the plea proceeding. *Id.* This requires the "court to delve into the accused's state of mind." *Id.* In contrast, a challenge to the adequacy of the plea proceeding as required by Rule 2.8(2)(b) is an objective inquiry. The claim turns on the conduct of the district court and whether the "record shows that the trial court explained or referred to the [required information] in a manner reasonably intelligible to that defendant." *State v. Ballard*, 423 N.E.2d 115, 120 (Ohio 1981).

Because the claims are separate and distinct, it is entirely possible a guilty plea will be voluntarily, knowingly, and intelligently made although not in compliance with Rule 2.8(2)(b). For example, the district court might wholly fail to advise the defendant of the minimum and maximum prison sentences. Undoubtedly, the plea proceeding would not substantially comply with Rule 2.8(2)(b). However, the record might show the defendant's counsel advised the defendant of the sentences off the record prior to the plea proceeding. *See, e.g., Loye*, 670 N.W.2d at 154 (vacating convictions where defense counsel told the defendant of the penal consequences but the district court failed to comply with Rule 2.8(2)(b)). Similarly, a guilty plea colloquy might fully comply with Rule 2.8(2)(b), but the plea might nonetheless fail to comport with due process. For example, the record might reveal the defendant was under the influence of medications that interfered with the defendant's ability to understand the proceedings or the record might reveal the defendant was given materially bad legal counsel. *See, e.g., State v. Holden*, No. 16-0322, 2016 WL 7404615, at *3 (Iowa Ct. App. Dec. 21, 2016) ("Ultimately, counsel's failures undermined Holden's ability to understand the potential sentences he faced. While the district court explained the options plainly, Holden's understanding was warped by his counsel's incorrect advice. Based on that incorrect advice and the resulting misinformation provided to Holden, we find Holden's plea was not knowing and intelligent.").

With that background, the questions material to the resolution of the issue presented in this case are what is the specific claim asserted; and what relief, if

any, is the defendant entitled to receive upon establishing the claim. We now turn to these questions.

## IV.

## A.

The claim presented in this appeal is a rule-based claim. Specifically, whether the guilty plea proceeding complied with Rule 2.8(2)(b). As relevant here, the rule provides:

> The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>     . . . .
> (2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.

Although actual compliance with the rule is preferred, substantial compliance is acceptable. The substantial compliance standard focuses on the conduct of the district court during the plea proceeding. The objective is fixed, but its application is flexible. We ask whether the record establishes the district court conveyed the required information to the defendant such that it could be said the defendant understood the information. *See State v. Meron*, 675 N.W.2d 537, 544 (Iowa 2004) ("Substantial compliance requires that the essence of each requirement of the rule be expressed to allow the court to perform its important role in each case."); *see also Ballard*, 423 N.E.2d at 120 ("Rather, the focus, upon review, is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant.").

At least two of our cases have applied some sort of harmless error or material inducement standard to determine whether the plea colloquy was in substantial compliance with the Rule 2.8(2)(b). In *State v. Howell*, No. 07-1179, 2008 WL 783760, at *1 (Iowa Ct. App. Mar. 26, 2008), this court declined to grant relief on a claimed rule violation. The case was resolved on error preservation grounds. However, in dicta, the court stated the district court's provision of incorrect information regarding the fines substantially complied with the rule because the error was harmless. *See Howell*, 2008 WL 783760, at *2. In *State v. Peterson*, No. 11-1409, 2012 WL 3860730, at *1 (Iowa Ct. App. Sept. 6, 2012), we denied a defendant's challenge to his guilty plea where the district court failed to disclose the minimum fine, concluding there was substantial compliance because failure to disclose was not a material inducement to plead guilty. *See Peterson*, 2012 WL 3860730, at *3.

To the extent either *Howell* or *Peterson* could be interpreted to mean the district court substantially complied with Rule 2.8(2)(b) *because* the information was not a material inducement to the plea or was otherwise harmless, we disavow them. The cases confuse the rule and the remedy. *See McCarthy*, 394 U.S. at 468 (separating the issue of whether there was compliance with Federal Rule of Criminal Procedure 11 from the issue of the remedy for the failure to comply with Rule 11). We use a non-criminal case for illustrative purposes. If a home purchaser brought a misrepresentation suit against a home seller for failure to disclose a leaky basement, we would not say the home seller made an adequate disclosure because, after the fact, the evidence showed the condition of the basement was not actually a material inducement in purchasing the home.

Instead, we would say there was a failure to disclose but, perhaps, there was no remedy for the purchaser on the facts presented. The same concepts apply here. Substantial compliance focuses on whether the seller (the district court) adequately disclosed the leaky basement (Rule 2.8(2)(b) information). Whether the failure to disclose the required information induced action or was otherwise harmless is a question of remedies.

To the extent the dissent contends there was substantial compliance *because* the district court's omission of information was not a material inducement to the plea or was otherwise harmless, the dissent perpetuates the analytical error in *Howell* and *Peterson.* The dissent's reliance on federal precedent in support of its argument exposes the error. As noted above, *McCarthy* drew a distinction between the question of whether the district court complied with the federal rule and whether there should be a remedy for the failure to comply with the federal rule. At the time *McCarthy* was decided, the Federal Rules of Criminal Procedure already contained a harmless-error provision. *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Post *McCarthy*, a similar harmless error rule was inserted into Federal Rule 11 to clarify the harmless error rule applied to guilty plea proceedings. The text of the federal rule provides there shall be no remedy for the district court's failure to conduct a compliant plea colloquy if the error "does not affect *substantial rights*." Fed. R. Civ. P. 11(h) (emphasis added). The dissent interchangeably uses the terms "substantial compliance," "substantial rights," and "substantial error." However, the terms do not refer to the same concepts. The federal focus is on the

"substantial rights" of the defendant, i.e., whether the error caused harm to the defendant. *See United States v. Lane*, 474 U.S. 438, 449 (1986) (stating the harmless-error rule focuses on whether the error affected the defendant's substantial rights); *United States v. Shacklett*, 921 F.2d 580, 582 (5th Cir. 1991) (stating "this court will evaluate such failure to comply with Rule 11 under a harmless error analysis that focuses on whether the defendant's substantive rights were affected"). Our focus, for the purpose of determining "substantial compliance," is on the conduct of the district court. *See State v. Smothers*, 309 N.W.2d 506, 508 (Iowa 1981) (stating substantial compliance focuses on whether the district court used language sufficient to inform the defendant of the required information). The federal harmless-error cases do not address the question of "substantial compliance" within the meaning of our law.

When we turn our focus to the conduct of the district court, in light of the broad, prophylactic nature of the rule, we cannot conclude the district court substantially complied with Rule 2.8(2)(b). The rule requires the district court to perform two separate and distinct tasks "before accepting a plea of guilty." First, the district court must inform the defendant of the information set forth in the rule, which includes punishments. *See Loye*, 670 N.W.2d at 154 (stating district court did not substantially comply with Rule 2.8(2)(b) because the district court did not inform defendant of maximum possible punishments). As applicable here, *Fisher* held the criminal penalty surcharge set forth in chapter 911 was a "punishment" within the meaning of Rule 2.8(2)(b). 877 N.W.2d at 685–86. The *Fisher* court further held that actual compliance with the rule required the additional criminal penalty be disclosed during the guilty plea proceeding. It cannot follow that the

district court's failure to communicate any information regarding the "additional penalty" is substantial compliance with the rule. *See Meron*, 675 N.W.2d at 542 ("In this case, the substantial compliance standard was not satisfied. A number of the requirements of the rule were totally ignored."). Second, the rule also provides the district court "must" determine the defendant understands the information communicated. *See Loye*, 670 N.W.2d at 154. In this case, because the district court failed to mention the applicable additional criminal penalty imposed by chapter 911, it necessarily follows the district court could not and did not make an independent determination the defendant understood there would be an additional penalty.

The dissent seems to contend the district court's disclosure of information regarding the fines associated with each offense provided enough information to the defendant regarding the financial consequences of the plea, generally, to satisfy the substantial compliance standard. The dissent states, "What needs to be communicated is how much money the defendant may owe to the government as a result of pleading guilty." The contention fails for several reasons. First, *Fisher* specifically required disclosure of the applicable chapter 911 surcharges independent of information regarding the fines. 877 N.W.2d at 685. To the extent one could conclude the wholesale failure to mention the additional criminal penalty could constitute substantial compliance with the Rule 2.8(2)(b), one would necessarily have to ask why we would require the district court to disclose the additional penalty at all. Second, treating the fines and surcharges as a single penalty is inappropriate. The surcharge is a separate and distinct "additional penalty." Iowa Code § 911.1. Our cases require substantial

compliance in identifying each piece of information required to be relayed by the rule. *See Meron*, 675 N.W.2d at 542. Third, even assuming the information regarding the fines and penalties should be considered a single financial penalty, the district court still did not substantially comply with the rule. The failure to disclose the surcharge means the district court did not tell Weitzel, in the dissent's terms, "how much money the defendant may owe to the government as a result of pleading guilty." *See Fisher*, 877 N.W.2d at 686 (noting the failure to disclose the surcharge means the minimum financial punishment was undisclosed). Indeed, the district court understated the maximum and minimum financial penalty by thirty-five percent. To the extent our cases continue to hold financial penalties are material to a guilty plea proceeding and must be disclosed pursuant to Rule 2.8(2)(b), the failure to disclose thirty-five percent more in additional financial penalties is a material consequence. Fourth, this court has previously rejected the argument that disclosure of information regarding fines only is equivalent to providing information regarding the additional criminal penalty surcharge:

> The State concedes "Hoxsey was not specifically informed the surcharge amount could be thirty-five percent of the fine imposed" but asks the court to "find substantial compliance based on the plea form's general reference to costs and surcharge." We are not persuaded the general reference to surcharges amounted to substantial compliance. The court was obligated to inform Hoxsey of the minimum fine. The plea form identified the number as $625. This was not the minimum fine. With the thirty-five-percent surcharge, the minimum fine would have been $843.75.

*State v. Hoxsey*, No. 16-1043, 2017 WL 510983, at *1 (Iowa Ct. App. Feb. 8, 2017) (citations omitted).

In sum, we conclude the district court failed to substantially comply with Iowa Rule of Criminal Procedure 2.8(2)(b) by failing to inform the defendant of the applicable additional criminal penalties to be imposed pursuant to chapter 911 and by failing to determine the defendant understood the same.

B.

Our conclusion the plea proceeding in this case failed to substantially comply with Rule 2.8(2)(b) does not end our inquiry. As noted above, we must also address the issue of remedy. The most persuasive discussion of what remedy should be adopted for a violation of Rule 2.8(2)(b) is set forth in *McCarthy*:

> Having decided that the Rule has not been complied with, we must also determine the effect of that noncompliance an issue that has engendered a sharp difference of opinion among the courts of appeals. In *Heiden v. United States*, 353 F.2d 53 (1965), the Court of Appeals for the Ninth Circuit held that when the district court does not comply fully with Rule 11 the defendant's guilty plea must be set aside and his case remanded for another hearing at which he may plead anew. Other courts of appeals, however, have consistently rejected this holding, either expressly or tacitly.
>
> We are persuaded that the Court of Appeals for the Ninth Circuit has adopted the better rule. From the defendant's perspective, the efficacy of shifting the burden of proof to the Government at a later voluntariness hearing is questionable. In meeting its burden, the Government will undoubtedly rely upon the defendant's statement that he desired to plead guilty and frequently a statement that the plea was not induced by any threats or promises. This prima facie case for voluntariness is likely to be treated as irrebuttable in cases such as this one, where the defendant's reply is limited to his own plaintive allegations that he did not understand the nature of the charge and therefore failed to assert a valid defense or to limit his guilty plea only to a lesser included offense. No matter how true these allegations may be, rarely, if ever, can a defendant corroborate them in a post-plea voluntariness hearing.
>
> Rule 11 is designed to eliminate any need to resort to a later fact-finding proceeding "in this highly subjective area." The Rule contemplates that disputes as to the understanding of the

defendant and the voluntariness of his action are to be eliminated at the outset. As the Court of Appeals for the Sixth Circuit explained in discussing what it termed the "persuasive rationale" of *Heiden*: "When the ascertainment is subsequently made, greater uncertainty is bound to exist since in the resolution of disputed contentions problems of credibility and of reliability of memory cannot be avoided. There is no adequate substitute for demonstrating in the record at the time the plea is entered the defendant's understanding of the nature of the charge against him."

. . . .

On the other hand, had the District Court scrupulously complied with Rule 11, there would be no need for such speculation. At the time the plea was entered, petitioner's own replies to the court's inquiries might well have attested to his understanding of the essential elements of the crime charged, including the requirement of specific intent, and to his knowledge of the acts which formed the basis for the charge. Otherwise, it would be apparent to the court that the plea could not be accepted. Similarly, it follows that, if the record had been developed properly, and if it demonstrated that petitioner entered his plea freely and intelligently, his subsequent references to neglect and inadvertence could have been summarily dismissed as nothing more than overzealous supplications for leniency.

We thus conclude that prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea. Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

*McCarthy*, 394 U.S. at 468–72. *McCarthy* is not controlling for two reasons.

First, it was an interpretation of the Federal Rule 11. Second, *McCarthy* was

superseded by the adoption of the harmless-error rule. *See* Fed. R. Crim. P.

11(h). We thus explore the issue of remedy further.

*Peterson* and *Howell* could be interpreted to adopt a material-inducement or harmless-error standard with respect to the question of remedy. However, *Peterson* and *Howell* fail to distinguish between a due process claim—which focuses on the defendant's subjective understanding and whether the plea was actually voluntarily, knowingly, and intelligently made—and a rule-based claim—which focuses on the adequacy of the plea colloquy. In blurring that line, the cases rely on *Stovall v. State*, 340 N.W.2d 265, 267 (Iowa 1983), and *State v. West*, 326 N.W.2d 316, 317 (Iowa 1982). In *Stovall*, the district court provided incorrect information to the defendant regarding parole eligibility. This was information the district court was not required to provide pursuant to Rule 2.8(2)(b). In resolving the issue of whether the plea was voluntarily and intelligently made where the district court provided misinformation regarding matters not covered by the rule, the court applied a material-inducement standard. Similarly, in *State v. West*, the court again addressed the due process standard when the district court provided incorrect information the district court was not required by rule to provide to the defendant. *See West*, 326 N.W.2d at 317 ("It was not necessary for the court to inform him he was ineligible for deferred judgment or probation, but the voluntary and intelligent nature of the plea would be affected by any misstatement of the court placing in defendant's mind 'the flickering hope of a disposition on sentencing that was not possible.'" (citation omitted)). Because the claims were due process claims rather than rule-based claims, the defendant was required to prove material inducement or actual involuntariness. *Peterson* and *Howell* fail to recognize this distinction. *Stovall*

and *West* cannot provide guidance on the remedy for a violation of Rule 2.8(2)(b) because the rule was not at issue in either case.

To the extent either *Peterson* or *Howell* could be interpreted to adopt a material-inducement or harmless-error rule with respect to violations of Rule 2.8(2)(b), we disavow them. First, whatever the merits (or demerits) of the harmless-error rule, our state has chosen not to adopt the rule. Such a significant change in our mode of criminal practice and procedure should be accomplished, if at all, by the supreme court or by amendment to the Iowa Rules of Criminal Procedure after the time for notice and comment. *See Spencer v. Philipp*, No. 13-1887, 2014 WL 4230223, at *2 (Iowa App. Ct. App. Aug. 27, 2014) ("As a general rule, the task of materially altering substantive or procedural rights is best left to the General Assembly or the Supreme Court of Iowa.").

Second, controlling cases dictate that the required remedy for the district court's failure to substantially comply with Rule 2.8(2)(b) is to vacate the defendant's convictions and pleas and allow the defendant to plead anew. In *State v. White*, 587 N.W.2d 240 (Iowa 1998), the supreme court held a guilty plea is void where the plea was not taken in compliance with Rule 2.8(2)(b):

> Iowa Rule of Criminal Procedure 8(2)(b) requires the judge, before accepting a plea of guilty, to determine that the plea was made voluntarily and intelligently. The United States Constitution requires that to be truly voluntary the plea must be made knowingly and intelligently. The position urged by the State for our adoption violates these principles and requirements. It leaves the defendant informed of statutory words, thus partially informed, but uninformed of the true maximum possible punishment of twenty years imprisonment coming from consecutive sentences. In essence, defendant is uninformed and unenlightened. The letter of the law and the spirit of the law requiring that the guilty plea be made voluntarily and intelligently, mandated by Rule 8 and the Due

Process Clause of the United States Constitution have not been satisfied.

A trial court could satisfy the Rule 8 and constitutional requirements on this issue with a few words explaining the difference between consecutive and concurrent sentences. This colloquy between the judge and the defendant could take less than one minute. It would comply with the requirements of our laws, in spirit and in truth. And, it would not unduly burden our courts.

*White*, 587 N.W.2d at 246 (citation omitted).

Similarly, in *Loye*, the district court failed to inform the defendant of the potential punishments, including fines. The State contended the guilty pleas and convictions need not be vacated because the defendant had actual knowledge of the punishments based on defense counsel's discussion of the same with the defendant. In addition, the defendant had actual knowledge of all material information because of the extensive proceedings related to the defendant's admission into drug court. The *Loye* court rejected the conclusion that the defendant's actual knowledge of the punishments was relevant, stating:

it does not relieve the [district] court of its obligation to ensure the defendant's knowledge and understanding of the nature of the charges and the potential punishments. Nor is the court's obligation lessened because the defendant's attorney has discussed the same matters with the accused in preparation for the plea hearing.

*Loye*, 670 N.W.2d at 153. The *Loye* court focused on the district court's conduct, and not the harm to the defendant.

The dissent attempts to distinguish *White* and *Loye* on the ground those cases involved misinformation regarding "lengthy prison sentences." Nothing in *Fisher* makes a distinction between the remedies available to a defendant based on the nature of the penal consequences at issue. Nothing in the plain language of the rule makes a distinction between the remedies available to a defendant

based on the nature of the penal consequences at issue. More important, the dissent's distinction is immaterial. The material fact in *Loye* was not the nature of the penal consequences not addressed during the plea colloquy; the material fact was the defendant had actual knowledge of the penal consequences of the guilty plea based on discussions with counsel. *See Loye*, 670 N.W.2d at 153. *Loye* thus stands for the proposition that even when the defendant has actual knowledge of the penal consequences—i.e., the omissions were harmless, as a matter of law, because the defendant actually knew the omitted information—the district court's failure to substantially comply with Rule 2.8(2)(b) still required the defendant's convictions be vacated.

Finally, *Fisher* also set forth the required remedy upon a finding the district court failed to substantially comply with Rule 2.8(2)(b). The surcharge issue left open in *Fisher* and resolved in this case actually was not the primary issue in *Fisher*. The primary question presented in *Fisher* was "whether a defendant pleading guilty to a controlled-substance offense has a right to be informed beforehand that, as a result of the conviction, his driver's license will be revoked for 180 days." *Fisher*, 877 N.W.2d at 678. The court held that "[b]ecause revocation of the driver's license of a person convicted of a drug possession offense is mandatory, immediate, and part of the punishment for that offense, the court must inform the defendant of this consequence before accepting his or her plea." *Id.* at 684. The supreme court further held the failure of the district court to advise the defendant of this penal consequence in contravention of Rule 2.8(2)(b) required the defendant's "conviction and sentence [ ] be set aside." *Id.* at 684-85. The *Fisher* court did not analyze whether the omission of information

regarding revocation of the defendant's license was a material inducement to the plea or whether the defendant otherwise suffered some prejudice as a result of the non-compliant plea colloquy. As in *McCarthy*, *White*, and *Loye*, the *Fisher* court applied a bright line rule with respect to the remedy—if the district court failed to conduct a plea colloquy in substantial compliance with Rule 2.8(2)(b), then the conviction and sentence must be vacated and the matter must be remanded for further proceedings. *Fisher* left open only the question of whether the failure to advise the defendant of the chapter 911 criminal penalty, alone, would constitute substantial compliance with the rule. *Fisher* definitively answered the question of the required remedy upon a finding the district court failed to substantially comply with the rule. *Fisher* is controlling precedent, which we are not at liberty to ignore.

Third, the remedy required by *White*, *Loye*, and *Fisher* is dictated by the text of the rule. Rule 2.8(2)(b) provides the district court "shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis." Generally, "shall" is considered mandatory. Rule 2.8(2)(b) also provides, "*[b]efore* accepting a plea of guilty, the court *must . . . determine* that the defendant understands . . . [t]he mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered." (Emphasis added.) Nothing in the language of the rule indicates the rule is satisfied if the defendant does not rely on an omission or the omission is harmless. To the contrary, the plain language of the rule provides the district court cannot accept a plea without a prior determination the defendant understands the minimum and maximum

financial penalty. The failure to disclose the surcharge means the defendant was not informed of the mandatory minimum financial penalty or the maximum possible financial penalty. *See Fisher*, 877 N.W.2d at 686 (noting the failure to disclose the surcharge means the minimum financial punishment was undisclosed); *Hoxsey*, 2017 WL 510983, at *1 (same). The failure to disclose the surcharge, by necessity, also means the district court could not and did not make the required determinations prior to accepting the plea.

Finally, we note the material-inducement standard is inconsistent with fundamental rule-of-law principles. *See State v. Gaskins*, 866 N.W.2d 1, 40 (Iowa 2015) (stating rule-of-law values include "consistency and equal treatment, stability, and predictability at any one time and over time"); *State v. Campbell*, No. 15-1772, 2017 WL 706208, at *8–9 (Iowa Ct. App. Feb. 22, 2017) (explaining we should prefer legal rules capable of consistent application). A material-inducement standard seems incapable of consistent application on appeal. The result of any particular case would be largely dependent upon the appellate panel drawn. Without a record regarding the defendant's subjective motivations for entering into a guilty plea, it is unclear how this court on direct appeal would be able to determine, the defendant was not at all motivated by the financial consequences of the plea. It would be utter speculation to conclude one defendant could not have cared as a matter of law because he received charging concessions but another defendant might have cared as a matter of law because he received a lesser charging concession. Where is the line to be drawn? How is the line to be drawn with no record regarding the defendant's subjective intent? *McCarthy*, *White*, *Loye*, and *Fisher* resolve this problem by adopting a bright-line

rule—if the district court failed to substantially comply with Rule 2.8(2)(b), then the case must be remanded to the district court to allow the defendant the opportunity to plead anew.

The dissent's attempt to distinguish *Fisher* on the question of remedy highlights the speculative nature of the endeavor. The dissent concedes the *Fisher* court did not discuss or even mention materiality, which would seem to indicate the *Fisher* court rejected the harmless-error approach and applied the bright line rule required by *White* and *Loye.* The dissent goes on to argue, however, the *Fisher* court must have considered materiality because losing one's driving privileges was a "significant consideration" for the defendant. However, the dissent also concludes it would not be a significant consideration if the case involved other offenses that required incarceration. It is unclear on what basis the dissent makes this distinction. Would the punishment be material if the charging concession was from a class D felony to an aggravated misdemeanor? From an aggravated misdemeanor to a serious misdemeanor? From two class D felonies to a single class D felony and an aggravated misdemeanor? From two class D felonies to a single misdemeanor? Would it matter if the plea agreement called for suspended sentences? The permutations are endless. Perhaps there are easy cases on either end of the curve, but there are substantially more in the mushy middle incapable of consistent resolution. Unless, of course, the dissent simply means that the financial penalties associated with a guilty plea are always immaterial as a matter of law. Again, that merely begs the question of why interpret Rule 2.8(2)(b) to require the disclosure of immaterial penal consequences. We are not at liberty to question that determination. Our

supreme court has concluded the financial penalties are sufficiently material to require disclosure under the rule. Those cases are controlling.

We note the district court's failure to substantially comply with Rule 2.8(2)(b) would not necessarily mean the defendant would prevail if the claim were presented as an ineffective-assistance-of-counsel claim on direct appeal or in postconviction-relief proceedings. In those cases, the defendant would still have to establish *Strickland* prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the typical case, any such claim presented on direct appeal would be preserved for postconviction-relief proceedings. *See State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006) ("Under the 'reasonable probability' standard, it is abundantly clear that most claims of ineffective assistance of counsel in the context of a guilty plea will require a record more substantial than the one now before us."); *see also State v. Feregrino*, 756 N.W.2d 700, 707–08 (Iowa 2008) (explaining a violation of required colloquy (jury trial waiver) does not necessarily prove the defendant failed to actually understand the issue and concluding *Strickland* prejudice would have to be established when such a claim was presented as an ineffective-assistance-of-counsel claim). In postconviction-relief proceedings, the defendant would bear the burden of establishing both that counsel was ineffective and that the defendant would not have pleaded guilty but for the alleged error. That is a significant barrier to overcome.

For the foregoing reasons, we hold the required remedy for the district court's failure to substantially comply with Rule 2.8(2)(b) when presented on direct appeal as a rule-based claim is to vacate the defendant's pleas and convictions and allow the defendant to plead anew.

V.

We hold the defendant was not barred from directly contesting the adequacy of the guilty-plea proceeding on direct appeal because he was not informed of the need to file a motion in arrest of judgment. We hold the district court failed to substantially comply with Rule 2.8(2)(b) when it wholly failed to disclose to the defendant any information regarding the additional penalties to be imposed pursuant to Iowa Code chapter 911 and failed to determine the defendant understood the same. We hold the required remedy for the failure to conduct a rule-compliant plea colloquy when the rule-based claim is directly presented is to vacate the defendant's guilty plea and convictions and remand the matter for further proceedings.

**CONVICTIONS AND SENTENCES VACATED AND REMANDED.**

All Judges concur except Mullins, J. who concurs specially and Tabor and Doyle, JJ. who dissents.

**MULLINS, Judge.** (concurring specially)

I concur in the majority opinion but write separately to emphasize philosophical and practical implications of this case. It goes without saying that our judicial system is an important component in the fabric of our democratic form of government premised on the rule of law. Our courts interpret the law and apply the interpretation to the cases before us. We are governed by constitutions, statutes, rules, and legal precedents. At every jurisdictional level, courts make tough decisions every day that seem harsh to some but are necessary if our society is to be governed by the rule of law. We dismiss cases that are filed a day after a statute of limitations has expired. We dismiss criminal cases that are not tried within speedy-trial deadlines. We find persons guilty of crimes if their actions satisfy the elements of the offense. We revoke probation and send defendants to prison for seemingly minor rule violations. All are premised on the rule of law.

In addition to applying the law, our supreme court writes rules to govern conduct. We sanction parties and lawyers for failing to follow rules. Sometimes we forgive failure to comply if there was substantial compliance or if justice requires a balancing of prejudice to the parties. The point is, *we*—the courts— decide. That is our job and is required by our oaths of office.

The public expects us to follow the law. They expect us to follow *the rules*, especially the rules we—the courts—write. Persons charged with crimes expect us to follow the rules. After all, we not only expect them to do so, we are obligated to act responsively if they do not. Those accused of wrongdoing often seem especially aware of violations of rules, even minor ones, by those seeking

to enforce the rules. One sees it at home ("But Daddy, you did . . . ."), at school ("But the teacher says . . . ."), at work ("But my supervisor told me . . . ."), on the streets ("But the police officer did . . . ."), and in politics ("But he said he would . . . .").

Most often, court rules are adopted to address ongoing or recurrent issues; Iowa Rule of Criminal Procedure 2.8(2)(b) is such a rule. Rules are intended to bring continuity and predictability, to take the guess work out of what is required. When we fail to follow our rules, we are inviting criticism: Why does a party to a case have to follow the rules when the court does not? We should limit variances from the rules. I certainly agree there are appropriate applications of a "substantial compliance" approach to rule enforcement. But the present case does not fit. The problem with failure to inform criminal defendants of the specific surcharges that will be imposed is not an isolated problem. Our court is planning to publish the opinions in this case and two other cases in response to approximately twenty such cases that have flooded our court over the last several months. The criminal penalty surcharge required by Iowa Code section 911.1 has been in effect since 1982. The amount of the surcharge has been thirty-five percent since 2009. This surcharge is no surprise; it is well known by the courts and the lawyers. The requirement that criminal defendants must be informed of the maximum and minimum penalties, not just terms of incarceration, has long been in place. This is exactly the type of situation for which we should—and do—have a rule; so we can avoid the uncertainties of ad hoc decision-making, and so those who appear in court can know what to expect.

I am not unmindful of the pressures faced by our trial courts. Heavy caseloads, shortage of support, judicial vacancies, limited resources, ever-present uncertainty of adequate funding, and public scrutiny all take a toll on the courts and pressure us to do more with less. Notwithstanding these realities, the public—one case, every case, at a time—expects us to play by the rules.

We should follow the rules. It is not too much to ask, and it is the right thing to do.

**TABOR, Judge.** (dissenting)

I respectfully dissent. Before accepting Weitzel's guilty pleas, the district court substantially complied with the penal-consequences requirement under Iowa Rule of Criminal Procedure 2.8(2)(b)(2) by informing him and determining he understood that he faced up to ten years in prison and more than $20,000 in financial obligations to the State.[1] The majority vacates Weitzel's four convictions because the court failed to mention that his fines, if imposed, would carry 35% surcharges.[2] *See* Iowa Code § 911.1. In doing so, the majority shifts from a substantial-compliance standard to a strict-compliance measure inconsistent with Iowa case law. *See State v. Myers*, 653 N.W.2d 574, 578 (Iowa 2002) ("[W]here the defect in the plea proceeding concerns the content of the information conveyed to [the defendant], . . . only substantial compliance with rule 2.8(2)(b) is required.").

Forty years ago, our general assembly enacted what is now rule 2.8(2)(b). *See State v. Finney*, 834 N.W.2d 46, 58 (Iowa 2013). When first interpreting the legislation's effect, our supreme court held that a plea-taking court must inform a defendant of and determine he understands "the nature of the charge, its possible penal consequences and the particular constitutional rights he waives by pleading guilty" and determine that a factual basis for the plea exists. *State v. Fluhr*, 287 N.W.2d 857, 869 (Iowa 1980), *overruled on other grounds by State v.*

---

[1] The district court also informed Weitzel that he would be responsible for a domestic-abuse surcharge of $100. Iowa Code § 911.2B (2016). The court further discussed the law enforcement initiative surcharge of $125 and the DARE surcharge of $10 on the methamphetamine-possession count. *See id.* §§ 911.2, .3.

[2] As a result of a plea bargain, Weitzel pleaded guilty to one felony and three indictable misdemeanors; the State dismissed another felony count. At sentencing, Weitzel received an indeterminate nine-year prison term, as well as a fine and surcharges totaling $1922.50. Three of the four fines were suspended.

*Kirchoff*, 452 N.W.2d 801 (Iowa 1990). In *Fluhr*, the supreme court discovered an "extensive disregard of the rule's requirements, thus raising doubts as to the voluntariness of the plea."[3] *Id.* at 864.

But the *Fluhr* court could not have imagined today's majority decision when announcing its holding. In fact, the *Fluhr* majority warned against such a result:

> This holding should not be construed to mean that every minor omission from the oral colloquy in a guilty plea proceedings should be fatal. As [*State v.*] *Sisco* announced, "meaningful compliance," 169 N.W.2d [542,] 548 [(Iowa 1969)], or "substantial compliance," *Id.* at 551, with procedural guidelines for taking guilty pleas is sufficient. Certainly a plea-taking error which raises no doubt as to the voluntariness or factual accuracy of the plea may be properly disregarded, provided the defendant is unable to prove prejudice.

*Id.* (cautioning against an "exalt [of] formalism at the expense of the societal interest in finality of judgments").

## I.     Substantial Compliance Means Plea-Taking Court Must Have Informed Defendant Regarding Essential Penal Consequences.

Because rule 2.8(2)(b) lists five general categories of required information,[4] our case law has defined "substantial compliance" as expressing "the essence of each requirement of the rule." *See State v. Meron*, 675 N.W.2d

---

[3] In *Fluhr*, the court's majority vacated the conviction because, among other deficiencies: "The subject of penal consequences was not broached during the colloquy, except for the judge's comment that sentencing would be determined by a judge at a later time." 287 N.W.2d at 861.

[4] Those categories are (1) the nature of the charges to which the pleas are being offered; (2) mandatory minimum punishment, if any, and maximum possible punishment provided by the statute defining the offenses to which the pleas are offered; (3) how a conviction may affect the defendant's immigration status; (4) trial rights, including trial by jury, assistance of counsel, confrontation, cross-examination, against self-incrimination, presentation of witnesses, and compulsory process; and (5) that a guilty plea waives the right to a trial. *See* Iowa R. Crim. P. 2.8(2)(b). In Weitzel's case, the district court provided detailed information concerning each of these categories, as well as assuring a factual basis for each of his four offenses.

537, 544 (Iowa 2004); *see also State v. Loye*, 670 N.W.2d 141, 151 (Iowa 2003) ("'Substantial compliance' requires at a minimum that the defendant be informed of [the items listed in the rule] and understand them."). More recently, the supreme court reiterated the substantial-compliance standard in a case involving the factual basis for a guilty plea by saying "insubstantial errors should not entitle a defendant to relief." *Finney*, 834 N.W.2d at 62; *see also State v. Fisher*, 877 N.W.2d 676, 682 (using "a substantial compliance standard to determine whether a plea crosses the rule 2.8(2)(b)(2) threshold"[5] ).

The question today is whether understating Weitzel's potential financial obligation by not factoring in the surcharges mandated by section 911.1 constituted a substantial error entitling him to relief. The majority misreads *Fisher* in holding the district court's failure to communicate "any information regarding the surcharges" could not be substantial compliance with rule 2.8(2)(b)(2).[6] But the potential imposition of "surcharges" is not a separate and distinct category of information that needs to be communicated under the rule; the category of information at issue is "the mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered." *See* Iowa R. Crim. P. 2.8(2)(b)(2). The district court does not need to talismanically utter the word "surcharge" to satisfy *Fisher*. What needs to be communicated is how much money the defendant may owe to the government as a result of pleading guilty. *See Fisher*, 877 N.W.2d at

---

[5] When reviewing the plea-taking court's admonitions, we must take a "common sense approach" to determine whether the court has substantially complied with the provisions of the rule. *See People v. Walker*, 316 N.E.2d 138, 139 (Ill. App. Ct. 1974).
[6] The district court *did* provide Weitzel with information about some applicable surcharges, just not the 35% surcharges mandated by section 911.1.

686 (seeing "no meaningful difference between a fine and a built-in surcharge on a fine"). And we must not overlook that the more important aspect of informing the defendant about "the maximum possible punishment" is providing an accurate picture of the potential loss of liberty resulting from the plea bargain. In this case, the court accurately described for Weitzel and secured his appreciation that his guilty pleas could result in prison sentences as lengthy as ten years. As the State argues in its brief, under the totality of circumstances in this plea bargain, information about the 35% surcharges added to the fines—three of which the plea-taking court advised could be suspended—was of far less consequence than the potential decade of incarceration. *See State v. Richardson*, 890 N.W.2d 609, 622–23 (Iowa 2017) (noting "imprisonment is qualitatively different" from fines or restitution and stating "[o]ne is a matter of liberty, the other a financial obligation").

The majority cites no case where an Iowa appellate court has vacated a defendant's convictions based *solely* on misinformation provided by the district court concerning the financial implications of a plea bargain. The majority contends *State v. Hoxsey*, No. 16-1043, 2017 WL 510983 (Iowa Ct. App. Feb. 8, 2017), supports its conclusion because a panel of this court was "not persuaded" that a general reference to surcharges on a guilty plea form amounted to substantial compliance with rule 2.8(2)(b)(2). But that statement was dicta. *Hoxsey* "assumed without deciding" that counsel breached a material duty by not ensuring the defendant was advised of the surcharges but found no prejudice

because the fines and surcharges were suspended and affirmed Hoxsey's conviction.[7]  2017 WL 510983 at *1–2.

The majority also focuses on *White* and *Loye*; in both of those cases, the district court failed to accurately inform a defendant about the penalties resulting from a guilty plea, prompting our supreme court to vacate the convictions and allow the defendants to plead anew.  But in both *White* and *Loye*, the plea-taking court failed to provide accurate information about lengthy prison sentences.  *See, e.g.*, *White*, 587 N.W.2d 240, 246 (Iowa 1998) (finding defendant was "uninformed and unenlightened" about the maximum possible punishment of twenty years imprisonment coming from consecutive sentences); *see also Loye*, 670 N.W.2d at 152 (chronicling numerous deficiencies in the plea colloquy arising out of a drug-court case, including no information about the penalty for marijuana possession, plus the court's mistatement that penalty for third-degree burglary was "five years in the penitentiary *or* as much as a $7500 fine" when "[i]n fact, the possible penalty was five years imprisonment *and* a fine of at least $750 and not more than $7500").  *White* and *Loye* do not stand for the proposition that *all* misinformation about penalties—however insignificant—requires a reviewing court to vacate the defendant's convictions.  If they did, *Fisher* would not have left unresolved the question "whether failure to disclose the surcharges *alone* would have meant the plea did not *substantially comply* with rule 2.8(2)(b)(2)."  877 N.W.2d at 686 n.6.

---

[7] Under the majority's formulation today, in cases where a plea claim is analyzed directly rather than through the lens of ineffective assistance of counsel, the ultimate suspension of fines at sentencing would make no difference.  If the plea-taking court failed to inform the defendant about the surcharges, even if those obligations were never borne by the defendant, the conviction must be vacated.

En route to vacating Weitzel's convictions, the majority disavows two unpublished cases of our court—a move seemingly both pointless and rash. In those two cases—*Peterson* and *Howell*—panels of our court decided that plea colloquies had substantially complied with rule 2.8(2)(b)(2) despite the district court making inaccurate statements about the amount of the fines. *See State v. Peterson*, No. 11-1409, 2012 WL 3860730, at *3 (Iowa Ct. App. Sept. 6, 2012); *State v. Howell*, No. 07-117, 2008 WL 783760, at *2 (Iowa Ct. App. Mar. 26, 2008). By disavowing those cases, we are now saying *any minor variance* in the information provided by the district court concerning the financial obligations owed by a defendant as a result of pleading guilty is cause for vacating the convictions. If a plea-taking court forgets to tell a defendant about the $10 DARE surcharge mandated by Iowa Code section 911.2(1), that is grounds for vacating a drunk-driving conviction. If a plea-taking court misstates the amount of any maximum or minimum fine, even slightly, that is grounds for vacating the conviction. Such eventualities mark a radical departure from the substantial-compliance standard.

## II. Rule 2.8(2)(b) Codifies Due-Process Requirements; If Misinformation Given by Plea-Taking Court Is Not Material Inducement for Plea, No Due Process Violation Occurs.

The majority tries to draw a bright line between due-process cases and rule-based cases, relegating Weitzel's appeal to the rule-based side of the line. It is true that "the entry of a plea by a defendant has both constitutional and procedural elements that must be addressed to ensure that a plea is entered voluntarily and intelligently." *See State v. Thomas*, 659 N.W.2d 217, 220 (Iowa 2003). But our case law defies a clean bifurcation between due-process and

rule-based claims. The supreme court has announced that rule 2.8(2)(b) "codifies" the due-process mandate. *See Loye*, 670 N.W.2d at 151; *see also Finney*, 834 N.W.2d at 60–62 (explaining that a challenge to the sufficiency of the plea colloquy would raise a due-process voluntariness issue).

Moreover, Weitzel's own brief alleges that because the colloquy failed to disclose the surcharges,[8] "the pleas violated due process and are void." Weitzel relies on *State v. Boone*, where the supreme court vacated a conviction because the plea-taking court "placed in the defendant's mind the flickering hope of a disposition on sentencing that was not possible." 298 N.W.2d 335, 338 (Iowa 1980). *Boone* is controlling authority for the holding in *State v. West*, 326 N.W.2d 316, 318 (Iowa 1982) (remanding to determine whether court's statement suggesting it had discretion to impose other than maximum prison sentence induced defendant's guilty plea). *Boone* and *West* apply when a defendant has received misinformation concerning the consequences of a guilty plea, "whether those statements are or are not required of the court under [now rule 2.8] of the rules of criminal procedure." *See Stovall v. State*, 340 N.W.2d 265, 267 (Iowa 1983) (holding plea is not voluntarily made if court makes a misstatement that is material "in the sense that it is part of the inducement for the defendant's decision to plead guilty"); *see also State v. Null*, 836 N.W.2d 41, 49 (Iowa 2013) (citing *Boone* for proposition a district court must "adequately explain the penalties" as part of plea colloquy and finding court's explanation adequate despite lack of statement that consecutive sentences meant mandatory

---

[8] Weitzel also contends the plea court erred by telling him the maximum fine for OWI was $1500, rather than $1250, and by failing to explain the fines could be cumulative.

minimums would total 52.5 years); *State v. Philo*, 697 N.W.2d 481, 489 (Iowa 2005); *State v. McCray*, No. 11-0731, 2011 WL 6674712, at *2 (Iowa Ct. App. Dec. 21, 2011).

Weitzel received misinformation from the plea-taking court about the financial implications of his guilty pleas. *Boone, West*, and *Stovall* dictate that under these circumstances, the reviewing court must decide whether that misinformation was a material inducement for Weitzel's decision to plead guilty—or, in other words, whether it rendered his guilty pleas unintelligent or involuntary. Making that decision is not, as the majority suggests, "utter speculation" about a defendant's subjective motivations. Rather, it is an objective assessment of materiality. *See Material, Black's Law Dictionary* (7th ed. 1999) (defining as "[o]f such a nature that knowledge of the item would affect a person's decision-making process; significant; essential").

In *Fisher*, the court found the guilty plea was "involuntary" because the defendant was not told that revocation of his driver's license for 180 days was a mandatory and immediate punishment resulting from his guilty plea to possession of marijuana. 877 N.W.2d at 684–85. Although *Fisher* did not include an analysis of materiality, it is reasonable to conclude that losing one's driving privileges for six months would be a significant consideration in a guilty plea to a misdemeanor drug-possession offense.[9] In contrast, absence of

---

[9] In some situations, though, the failure to advise of the license revocation may have no consequence. For instance, if Fisher's plea had involved other offenses that required incarceration, the six-month suspension of his driving privileges would not have affected his decision to plead guilty. *See Blackwell v. State*, 736 A.2d 971, 973 (Del. 1999) (holding trial court's failure to advise defendant he would not have been able to drive for more than two years was harmless when he was informed that he faced a fifteen-year mandatory-minimum term of incarceration).

information about the 35% surcharges was not material in the context Weitzel's felony plea bargain. First, Weitzel *was advised* that he faced a range of fines on the four offenses to which he was pleading guilty and *was advised* that three of the four fines could be suspended. So the surcharges were not an automatic result of the plea bargain in the same way Fisher's license suspension was. Second, Weitzel was told he faced up to ten years in prison, which loomed larger than the additional surcharge penalties.

Weitzel told the court he decided to enter *Alford* pleas to four counts in return for the State's agreement to dismiss another felony charge because he believed the evidence set out in the minutes of evidence was sufficient for a jury to find him guilty on all charges beyond a reasonable doubt. When viewed in context, Weitzel's plea bargain was not "involuntary" and should not be vacated.

### III.     Iowa Has Not Followed the Automatic-Reversal Rule Adopted by the Majority

Finally, the majority endorses an automatic-reversal rule derived from the discussion in *McCarthy v. United States*, concerning an early version of Rule 11, which governs guilty pleas in federal court. 394 U.S. 459, 471 (1969) (concluding "prejudice inheres in a failure to comply with Rule 11"). But even the federal courts moved quickly away from such an exacting approach. "In 1975, a few years after *McCarthy* came down, Congress transformed Rule 11 into a detailed formula for testing a defendant's readiness to proceed to enter a plea of guilty, obliging the judge to give specified advice about the charge, the applicable criminal statute, and even collateral law." *United States v. Vonn*, 535 U.S. 55, 69 (2002).

> [A]lthough a rule of *per se* reversal might have been justified at the time *McCarthy* was decided, "[a]n inevitable consequence of the 1975 amendments was some increase in the risk that a trial judge, in a particular case, might inadvertently deviate to some degree from the procedure which a very literal reading of Rule 11 would appear to require." After the amendments, "it became more apparent than ever that Rule 11 should not be given such a crabbed interpretation that ceremony was exalted over substance."

*Id.* at 70 (quoting Advisory Committee's Notes on federal rule). In 1983, a harmless-error provision[10] was added to the federal rule because "the practice of automatic reversal for error threatening little prejudice to a defendant or disgrace to the legal system" imposed "a cost on Rule 11 mistakes that *McCarthy* neither required nor justified." *Id.*

Even before the addition of the harmless-error provision, some federal circuits declined to automatically reverse when the trial court's admonitions strayed from the strict constructs of the guilty-plea rule. *See, e.g.*, *United States v. Dayton*, 604 F.2d 931, 940 (5th Cir. 1979) (upholding plea despite narration of the nature of the charges being given by the prosecutor rather than the court); *United States v. Conrad*, 598 F.2d 506, 510 (9th Cir. 1979) (rejecting claim that plea court did not adequately inform defendant of the penalties "provided by law" when it discussed only the bargained-for sentence because "[m]atters of reality, and not mere ritual, should be controlling" (alteration in original) (quoting *McCarthy*, 394 U.S. at 468 n.20)). This line of reasoning was ultimately embraced by the Advisory Committee on the federal rules, and the federal courts have moved "almost full circle" from "the inflexible remedial approach" of

---

[10] "A variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h).

*McCarthy*. *See Finney*, 834 N.W.2d at 54 (citation omitted) (detailing history of plea-bargain jurisprudence).

Iowa has never purported to follow the *McCarthy* automatic-reversal rule as a means to enforce the guilty-plea admonitions delivered by its trial judges. In the same year *McCarthy* was decided, our court adopted the plea-colloquy standards promulgated by the American Bar Association (ABA) Minimum Standards for Criminal Justice, Pleas of Guilty, sections 1.4 through 1.7. *See Sisco*, 169 N.W.2d at 547–48 (including the requirement that plea courts advise defendants of "the maximum possible sentence" and the "mandatory minimum sentence, if any"[11]). The *Sisco* court did not take the same firm stand as *McCarthy* regarding mandatory compliance with the procedural requirements, stating: "This does not mean a determination by trial courts of the matters here involved requires any ritualistic or rigid formula be fixed upon or followed. There must, however, be meaningful compliance with these guideline standards." *Id.*

After *Sisco*, but before enactment of what is now rule 2.8(2)(b), our supreme court twice held that a defect in the plea colloquy did not require reversal. *See State v. Reaves*, 254 N.W.2d 488, 491 (Iowa 1977) (noting plea-taking court omitted description of element of the crime), *superseded by rule as stated in Fluhr*, 287 N.W.2d at 859; *State v. Ceaser*, 245 N.W.2d 510, 511 (Iowa 1976) (holding judge's misstatement in plea hearing was "without prejudice and . . . harmless beyond a reasonable doubt"). More recently in *State v. Straw*, a

---

[11] By use of the word "sentence" rather than "punishment," the ABA Standards did not specifically require defendants be told about fines or other financial penalties. *See generally* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.4(d) (4th ed. 2016) (noting emphasis has been on requirement that the judge inform the defendant of the maximum possible punishment).

majority of our supreme court rejected a dissenting view that reversal should be automatic if the plea colloquy was flawed. 709 N.W.2d 128, 137–39 (Iowa 2006); *see also Finney*, 834 N.W.2d at 53–54, 60 (discussing harmless-error standard under federal rule and noting Iowa's approach under *Straw* is "in many ways similar to developments in federal case law after the 1983 amendment to Rule 11").

Given that parallel noted by our supreme court, I believe federal caselaw provides a useful analogy here. Before entry of a guilty plea in federal court, Rule 11 requires a full recitation of the potential penalties, including the possibility that restitution may be imposed as part of the ultimate sentence. *See* Fed. R. Crim. P. 11(b)(1)(K). Although Rule 11(b)(1)(K) requires the court to explain a defendant's liability for both fines and restitution, federal circuits, including the Eighth Circuit, have held a defendant is not prejudiced if his liability does not exceed the maximum amount that the court informed him could be imposed as a fine. *United States v. Miell*, 711 F. Supp. 2d 967, 982 (N.D. Iowa 2010) (collecting cases). As Judge Bennett explained: "The simple logic underlying this line of authorities is that '[i]t is the amount of liability, rather than the label "restitution," that affects [a defendant's] substantial rights.'" *Id.* (citation omitted).

Similarly here, any prejudice to Weitzel would not stem from unexplained costs labeled as "surcharges" but from a bottom-line liability at sentencing that was not foreshadowed at the plea hearing. At sentencing, Weitzel was ordered to pay $1922.50, in the form of a fine and surcharges; because Weitzel had been warned at the plea hearing he could face fines and surcharges totaling $21,735—and decided to plead guilty anyway—his rights were not impaired by

the court's failure to specifically inform him of the 35% surcharges mandated by section 911.1. *See Fluhr*, 287 N.W.2d at 864 (discussing propriety of disregarding inconsequential errors in plea colloquy unless defendant can show prejudice).

The majority's "bright-line rule"—reversing for any error in the information delivered by the plea-taking court concerning the potential penalties— undermines the ability of crime victims and members of the public to have confidence that valid convictions will not be vacated merely to remind plea-taking courts of the importance of "conducting a rule-compliant plea colloquy." The majority's refusal to consider whether a minor omission may, in context, be insubstantial, which is "directed at technical and literal compliance by our brothers [and sisters] on the district bench with [*Fisher*'s elaborations on rule 2.8(2)(b)], somewhat in the spirit of the exclusionary rule's attempt to deter police misconduct, seems to [me] inappropriate." *Dayton*, 604 F.2d at 940 (bemoaning "iron rule of review" for "post-*McCarthy* elaborations on Rule 11"). *Fisher* directed that district courts must reveal all applicable chapter 911 surcharges when advising defendants about the penal consequences of their guilty pleas. *See* 877 N.W.2d at 685–86. Rule 2.8(2)(b) "must be fully and faithfully followed, and [I] do not doubt that the district courts of this [state] will make all efforts to follow [*Fisher*'s] mandate. The question here is not whether such efforts should be made but how we should appraise them when they are." *Dayton*, 604 F.2d at 940 (declining to follow "automatic reversal" rule of *McCarthy*). Under the

circumstances of Weitzel's plea bargain, omission of the surcharge information was not a substantial error entitling him to relief..

Doyle, J., joins this dissent.



IOWA APPELLATE COURTS

State of Iowa Courts

**Case Number**  **Case Title**
16-1112          State v. Weitzel

Electronically signed on 2017-05-03 09:10:10