# IN THE COURT OF APPEALS OF IOWA

No. 17-0624
Filed May 2, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARC CHRISTOPHER PLETTENBERG,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Marshall County, Kim M. Riley, District Associate Judge.


        Marc Plettenberg appeals his convictions, sentences, and restitution orders following his guilty pleas to four offenses.  **AFFIRMED.**


        Richard R. Hollis, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.


        Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Presiding Judge.**

After Marc Plettenberg pled guilty to four offenses, he was sentenced to serve the sentences imposed consecutively. Thereafter, the court ordered Plettenberg to pay restitution for damages to a county police vehicle and for room, board, and medical expenses incurred while serving his sentences in its jail. He now appeals various aspects of the case, including arguing his trial counsel rendered ineffective assistance. Upon our review, we affirm.

### I. Background Facts.

In 2015, Marc Plettenberg was found guilty of driving while barred as an habitual offender in case number AGCR086445. A few months thereafter, he pled guilty to forgery and unauthorized use of a credit card of an amount under $1000 in case number FECR086357. He was placed on probation for all three convictions.

Plettenberg subsequently violated his probation agreement in numerous ways, including "failing to obey all laws" and "testing positive for methamphetamine." He was found in contempt of his probation supervision and ordered, as an additional condition of his probation, to complete a stay at the Marshalltown Residential Facility. Plettenberg was placed at the facility on February 9, 2016, but he absconded from the facility less than a week later. Plettenberg was charged thereafter with the crime of escape, a class "D" felony. *See id.* § 719.4(1) (2016).

Three weeks later, while he was a fugitive, a deputy sheriff observed Plettenberg driving a car with an expired validation sticker. The deputy, driving a fully-marked sheriff's office patrol truck, attempted to initiate a traffic stop, but

Plettenberg did not stop. A chase ensued. During the chase, Plettenberg drove up over a curb, blowing out his car's right front tire. He proceeded to drive across the lawn of the Hawkeye Care Center, causing extensive damage to the lawn and a concrete sidewalk. The chase continued. Ultimately, the deputy was able to pin and stop Plettenberg's car, but Plettenberg attempted to flee on foot. Plettenberg was then tackled by other law enforcement officers and a civilian and subsequently placed under arrest.

## II. *Proceedings*.

Thereafter, Plettenberg was charged with four crimes as a habitual offender in case number FECR088617: (I) escape, (II) eluding, and (III) second-degree criminal mischief, each a class "D" felony; and (IV) driving while barred, an aggravated misdemeanor. *See id.* §§ 321.279(3), 321.561, 716.1, 716.4, 719.4(1). Plettenberg initially pled not guilty to the four offenses, but he and the State later reached a plea agreement. Plettenberg agreed to plead guilty as charged to count IV, driving while barred, as well as pleading guilty to three lesser-included offenses of the other crimes charged, to be amended as follows: (I) escape, in violation of section 719.4(2), a serious misdemeanor, (II) eluding, in violation of section 321.279(2), an aggravated misdemeanor, and (III) third-degree criminal mischief, in violation of sections 716.1 and .5(2), an aggravated misdemeanor. The habitual-offender sentencing enhancement remained.

On March 10, 2017, Plettenberg entered four separate written guilty pleas. Concerning the escape charge, the plea stated:

> I understand that a maximum sentence for the offense charge is a fine of at least $315 but not to exceed $1,875 with a surcharge of 35%, and in addition the court may also order imprisonment not to

exceed one year, that I may be held responsible for court-appointed attorney fees and restitution, court costs, and a law enforcement initiative surcharge of $125[.]

The other three pleas each stated:

> I understand that a maximum sentence for the offense charges is imprisonment up to, but not to exceed two years. There shall be a fine of at least $625 but not to exceed $6,250, and I will be held accountable for a 35% surcharge on any fine imposed as well as court costs and attorney fees.

There was no explicit language in those latter three agreements addressing restitution. However, all four plea agreements stated:

> I have discussed with my attorney and hereby waive my right to be present and personally inform the Court of my plea and to speak for myself regarding sentencing, as is my right under rule 8(2)(b), Iowa Rules of Criminal Procedure.
>
> I have discussed with my attorney and understand that to contest the adequacy of my guilty plea, I must do so at least five (5) days prior to sentencing by a motion in arrest of judgment, and in any event at least 45 days from the acceptance of my plea, as provided in Rule 23(3), Iowa Rules of Criminal Procedure.
>
> My plea of guilty has been the result of a plea bargain whereby the parties will each make their own sentencing recommendation. The defense requests that this matter be handled at the same time as the probation revocation disposition in FECR086357 and AGCR086445. I ask the Court to accept my plea of guilty.

The court subsequently accepted the guilty pleas, finding:

> The written plea of guilty shows that the defendant's plea is voluntary, being freely and intelligently made, with an understanding of the charge, with knowledge of the penal consequences of the plea, with full knowledge of the defendant's constitutional rights, and that said rights are waived by a plea of guilty, without any threats, improper inducements or persuasion, and the Court finds there is a factual basis for the defendant's plea of guilty.

A sentencing hearing was held in March 2017. There, the prosecutor explicitly recommended:

> [T]urning to . . . FECR088617, starting with the misdemeanor [escape conviction], the State recommends a sentence of one year

in jail, that, of course, that it runs consecutively to be served at the end of any other sentences; a $315 fine and 35 percent surcharge.

For the [eluding conviction], the State recommends a sentence of two years; $625 fine; 35 percent surcharge.

For the [criminal-mischief conviction], the State recommends a sentence of two years, with the minimum $625 fine; 35 percent surcharge; Law Enforcement Initiative Surcharge. And that Mr. Plettenberg be ordered to pay restitution, if it is applicable.

On [the driving-while-barred conviction], the State recommends a sentence of two years prison with a $625 fine; 35 percent surcharge. And the State recommends that all the fines and the 35 percent surcharges be suspended. The State recommends that all these sentences run consecutive to one another.

Plettenberg's counsel did not object to the State's reference to restitution with respect to the criminal-mischief conviction and not the escape conviction, which was the only charge that explicitly referenced restitution in the parties' agreement. Defense counsel did request concurrent sentences be imposed and that the court suspend "any and all fines that are able to be suspended." Thereafter, the court accepted the State's recommendations and sentenced Plettenberg as follows:

[I]t will be the judgment and sentence of the court as to [the escape conviction, count I in FECR088617], that [Plettenberg] be fined $315.00, with a 35 percent surcharge. That sum cannot be suspended, so it will have to be paid. Court costs and attorney fees, of course, will be assessed to [Plettenberg].

As to [c]ounts II, III, and IV, [eluding, third-degree criminal mischief, and driving while barred, Plettenberg] will be fined the minimum fine of $625.00, with a 35 percent surcharge, both of which will be suspended.

On each of those matters, [Plettenberg] is further sentenced to a two-year term of incarceration . . . .

As to [the escape conviction, Plettenberg] is sentenced to a term of 365 days in the custody of the Marshall County Sheriff . . . [to] begin at the expiration of any existing sentences.

All sentences imposed in [FECR088617], again, will run consecutively to each other as well as consecutively to the terms of imprisonment on the probation revocation matters.

. . . .

I think I need to back up, too, on that [criminal mischief conviction. The clerk of court] will also assess a $125.00 Law

Enforcement Initiative Surcharge on that matter. And any victim restitution will have to be paid as part of the sentence in this case.

On March 27, 2017, the court entered its judgment entry regarding count I, the escape offense. The court entered an amended judgment entry on March 29, 2017, regarding counts II, III, and IV, the eluding, criminal mischief, and driving while barred offenses. The judgment entries were consistent with its sentencing on the record. The only mention of restitution in the judgment entries was in regard to count III, the criminal mischief offense.

On April 7, 2017, the prosecutor filed a statement of pecuniary loss, stating "the victim requests that restitution be ordered." The statement identifies the victim as the Marshall County Sheriff's Department and indicates the restitution sought was for $1151 in property damages. Attached was an estimate from Thats My Truck for a pushbumper with lights, a light, and labor to install and wire, totaling $1151. The same day, the court entered an order ordering Plettenberg to pay the restitution requested. The order also stated Plettenberg "may request a hearing on the amount of restitution." Plettenberg made no such request and three days later, filed his notice of appeal, expressly appealing the order "dated March 29, 2017 herein entered by the [court]." The same day, Plettenberg was released from the Marshall County Jail.[1]

On June 5, 2017, the Marshall County Jail filed a claim seeking reimbursement from Plettenberg for room, board, and medical expenses. We need not consider matters arising after the filing of the notice of appeal but note we address the jail fees restitution issue in *State v. Plettenberg*, No. 17-1312, 2018

---

[1] Plettenberg also filed in May 2017 an application for postconviction relief.

WL _____, at \*\_\_\_ (Iowa Ct. App. May 2, 2018), filed the same day as this opinion.

### III. Discussion.

In this appeal, Plettenberg asserts seven claims of error, several of which are nebulously articulated. The State challenges a few of the claims on error preservation grounds.

### A. Error Preservation.

"Error preservation is a fundamental principle of law with roots that extend to the basic constitutional function of appellate courts." *State v. Harrington*, 893 N.W.2d 36, 42 (Iowa 2017). "Its purpose is to allow the district court to correct error without the necessity of an appeal," and it further "serves to create a record for appellate review." *Id.* Thus, "[i]ssues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." *State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008); *see also Lee v. State*, 844 N.W.2d 668, 676-77 (Iowa 2014) ("As a general proposition, 'issues must be raised in the district court before we may review them on appeal.'" (citation omitted)). There are, of course, exceptions to the rule. For instance, the error-preservation rule generally does not apply "to void, illegal or procedurally defective sentences." *State v. Richardson*, 890 N.W.2d 609, 615 (Iowa 2017). Similarly, claims of ineffective assistance of counsel "are not bound by traditional error-preservation rules." *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006); *see also Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016) ("To the extent error is not preserved on an issue, any objections must be raised within an ineffective-assistance-of-counsel framework.").

### B. Ineffective Assistance of Counsel.

To prevail on a claim of ineffective assistance of counsel, Plettenberg must prove both that (1) his counsel failed to perform an essential duty and (2) he suffered prejudice as a result of his counsel's failure. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). When a defendant raises a claim of ineffective assistance in relation to a guilty plea, the defendant has the burden to show "there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." *State v. Straw*, 709 N.W.2d 128, 138 Iowa 2006). We can only resolve the ineffective-assistance-of-counsel claims on direct appeal if the record is adequate, and our review of the record is de novo. *See State v. Virgil*, 895 N.W.2d 873, 879 (Iowa 2017); *see also State v. Reynolds*, 670 N.W.2d 405, 411 (Iowa 2003) (noting ineffective-assistance-of-counsel claims are generally "preserved for postconviction relief proceedings to afford the defendant an evidentiary hearing and thereby permit the development of a more complete record," but the court "will, however, consider such claims on direct appeal where the record is adequate to determine as a matter of law that the defendant will be unable to establish one or both of the elements of his ineffective-assistance claim").

### 1. Minimum and Maximum Penalties.

Plettenberg asserts his trial counsel failed to inform him of the maximum possible sentence for all offenses combined (namely the imposition of prison terms with all sentences running consecutively to one another). As a result, he maintains he "experienced the legal prejudice of being sentence[d]" to consecutive

sentences. He also asserts his counsel failed to inform him "of the minimum possible penalty to the extent that the portion of the sentence for escape had to run consecutively to those parts of the sentence not involving escape." As a result, he claims he suffered "legal prejudice." While the State acknowledges that a defendant must generally be informed of the possible minimum and maximum penalties the record is unclear whether Plettenberg was so advised. Plettenberg has made no assertion that he would not have pled guilty had his attorney provided him the legal information. But we cannot penalize Plettenberg for an incomplete claim of ineffective assistance on direct appeal. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("[D]efendants are no longer required to raise ineffective-assistance claims on direct appeal, and when they choose to do so, they are not required to make any particular record in order to preserve the claim for postconviction relief"). Because of this, and because we believe the record before us is inadequate to decide Plettenberg's claim, we preserve it for possible later proceedings. *See id.* ("If . . . the court determines the claim cannot be addressed on direct appeal, the court must preserve it for a postconviction-relief proceeding, regardless of the court's view of the potential viability of the claim.").

### 2. *Factual Basis for Criminal Mischief Guilty Plea*.

Plettenberg argues the record lacked a factual basis to support his guilty to third-degree criminal mischief. Specifically, he argues he did not have the criminal intent necessary to commit criminal mischief. Because his trial counsel permitted him to enter a guilty plea, Plettenberg asserts his trial counsel rendered ineffective assistance. If a factual basis for a charge does not exist, but counsel permits "the defendant to plead guilty anyway, counsel has failed to perform an essential duty,"

and prejudice is inherent. *State v. Nall*, 894 N.W.2d 514, 525 (Iowa 2017). To determine if a factual basis exists, the only question "is whether the record shows a factual basis for the guilty plea." *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014). The record includes any statements by the defendant, the minutes of testimony, as well as the presentence report. *Id.* We conclude the record here is adequate to address this claim.

Criminal mischief is defined as "[a]ny damage, defacing, alteration, or destruction of property . . . done intentionally by one who has no right to so act." Iowa Code § 716.1. In *State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998), the Iowa Supreme Court concluded the plain language of the criminal-mischief statute requires an intent to damage, deface, alter or destroy property. Thus, the record must establish that Plettenberg intended to cause the damage to the Hawkeye Care Center property. *See Chang*, 587 N.W.2d at 461.

The State maintains that, "to facilitate his escape, [Plettenberg] intentionally caused damage." The minutes of testimony clearly state that while being pursued by law enforcement, Plettenberg drove through "the grass and landscaping Hawkeye Care Center causing in excess of $1000.00 damage." Moreover, Plettenberg admitted in his criminal-mischief guilty plea he "did intentionally damage, deface, alter, or destroy property, with no right to so act." Clearly a factual basis for third-degree criminal mischief existed in the record before the plea court. Consequently, Plettenberg's trial counsel did not render ineffective assistance when he permitted Plettenberg to enter a guilty to plea to the charge.

### C. Restitution for Sheriff's Patrol Truck Damages.

Because the order imposing restitution to pay for damages to the sheriff's patrol truck was filed after sentencing, Plettenberg's claims of breach of plea agreement and improper imposition of restitution are preserved for our review. Because we find both issues to be related, we address them together. We review challenges to both guilty pleas and restitution orders for correction of errors at law. *See State v. Weitzel*, 905 N.W.2d 397, 401 (Iowa 2017); *State v. Dubois*, 888 N.W.2d 52, 53 (Iowa 2016); *State v. Fisher*, 877 N.W.2d 676, 680 (Iowa 2016).

### 1. Breach of Plea Agreement.

First, Plettenberg argues the State's request and the court's imposition of restitution are not expressly set out in his plea agreement—specifically, damages to the patrol truck—was a breach of the parties' agreement. If it was not a breach, Plettenberg further asserts the restitution ordered was improper under the restitution statute. In response, the State argues that regardless of whether the plea agreements expressly stated Plettenberg was responsible for paying restitution, imposition of restitution is mandated by statute and the district court could not *not* impose it.

"Restitution is a creature of statute" and is set forth in Iowa Code chapter 910. *Dubois*, 888 N.W.2d at 53. Section 910.1(4) defines "restitution" as

> payment of pecuniary damages to a victim in an amount and in the manner provided by the offender's plan of restitution. "Restitution" also includes fines, penalties, and surcharges, the contribution of funds to a local anticrime organization which provided assistance to law enforcement in an offender's case, the payment of crime victim compensation program reimbursements, payment of restitution to public agencies . . . court costs including correctional fees . . . , court-appointed attorney fees . . . .

"Pecuniary damages" are "damages to the extent not paid by an insurer, which a victim"—defined as "a person who has suffered pecuniary damages as a result of the offender's criminal activities"—"could recover against the offender in a civil action arising out of the same facts or event." Iowa Code § 910.1(3), (5). "'Criminal activities' means any crime for which there is a plea of guilty . . . upon which a judgment of conviction is rendered . . . ." *Id.* § 910.1(1). Section 910.2(1) mandates that,

> [i]n all criminal cases in which there is a plea of guilty . . . upon which a judgment of conviction is rendered, the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities, to the clerk of court for fines, penalties, surcharges, and, to the extent that the offender is reasonably able to pay, for crime victim assistance reimbursement, restitution to public agencies . . . , court costs including correctional fees . . . , court-appointed attorney fees . . . .

Although the definition of "restitution" in chapter 910 includes fines, penalties, and surcharges, the latter three categories are more specifically set out in their own separate chapter. *See id.* chs. 909, 911, & 912. Notably, all three—fines, penalties, and surcharges—are considered forms of punishment which must generally be disclosed before accepting a guilty plea, because they "are considered direct consequences of the plea." *See Fisher*, 877 N.W.2d at 685-86 (citing *State v. Brady*, 442 N.W.2d 57, 59 (Iowa 1989)); *see also Weitzel*, 905 N.W.2d at 407-08. Yet, "there is no requirement in Iowa that the defendant be advised of his obligation to pay restitution upon pleading guilty." *Weitzel*, 905 N.W.2d at 412 (Mansfield, J., dissenting) (citing *Brady*, 442 N.W.2d at 59). Similarly, court costs, though listed in the definition of restitution, are not

considered a form of punishment and do not need to be disclosed in advance of the plea. *See Fisher*, 877 N.W.2d at 685 (citing *Brady*, 442 N.W.2d at 59).

Here, the restitution order at issue, which requires reimbursement for damages to the patrol truck, does not fall into the category of a fine, penalty, or surcharge and is not therefore a punishment. Consequently, the failure to specifically advise Plettenberg he would have to pay this form of restitution would not render his plea agreement defective or breach the plea agreement. We therefore find no error.

### 2. *Legality of Restitution Imposed*.

Plettenberg also argues the restitution imposed was an error, because the damage to the patrol truck was caused by the deputy's decision to pin Plettenberg's vehicle to stop it—not by Plettenberg's actions. The State responds that "the damage to the patrol vehicle constitutes pecuniary damage to a victim . . . . Because the restitution the district court imposed falls squarely within the statutory definition, the court committed no error when it ordered Plettenberg to pay restitution . . . for pecuniary damages to Marshall County." We agree.

"In reviewing a restitution order 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.'" *State v. Hagen*, 840 N.W.2d 140, 144 (Iowa 2013) (citation omitted).

> In calculating a restitution order, the district court must find a causal connection between the established criminal act and the injuries to the victim. The damage must have been caused by the offender's criminal act to justify the restitution order. Once the causal connection is established by a preponderance of the evidence, "the statute allows recovery of 'all damages' . . . which the state can show by a preponderance of the evidence." A restitution order is not excessive "if it bears a reasonable relationship to the damage caused." In the criminal context, failure of the State to satisfy its

burden of proof as to damages does not preclude pursuit of civil recovery for the costs of an audit.

*State v. Bonstetter*, 637 N.W.2d 161, 168 (Iowa 2001) (internal citations omitted). Moreover, "the amount of restitution ordered in a criminal prosecution is not limited by the parameters of the offense for which the defendant enters a guilty plea." *Teggatz v. Ringleb*, 610 N.W.2d 527, 529 (Iowa 2000); *see also State v. Holmberg*, 449 N.W.2d 376, 377 (Iowa 1989) ("Defendant argues that the restitution order must be limited by the parameters of the offense to which he entered his guilty plea, in this case $500. This view is at odds with our [case law]. Under these cases the order can be extended to any amount which would be appropriate for tort recovery.").

Here, Plettenberg pled guilty to escape, eluding, criminal mischief, and driving while barred. Clearly the damages to the patrol truck are reasonably related to Plettenberg's criminal activity of eluding and/or criminal mischief. And there is no question the Marshall County Sheriff's Office can be a "victim" within the meaning of chapter 910. *See Hagen*, 840 N.W.2d at 147. The district court did not err in ordering Plettenberg to pay restitution for the damages sustained to the sheriff's patrol truck.

### D. *Imposition of Consecutive Sentences*.

Finally, Plettenberg contends the district court erred in imposing consecutive sentences. He asserts his conduct was "not sufficiently egregious to warrant the imposition of consecutive sentences."

The sentencing court is required to state on the record the reasons for imposing a particular sentence and that includes the requirement to articulate the

reasons for imposing consecutive, rather than concurrent, sentences. *See State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016). Our review of the district court's decision to impose consecutive sentences is for abuse of discretion, which "will only be found when a court acts on grounds clearly untenable or to an extent clearly unreasonable." *State v. Leckington*, 713 N.W.2d 208, 216 (Iowa 2006).

At sentencing, the district court observed:

> The court has before it today a man who's approximately 47 years of age, and he had previously admitted to having violated terms and conditions of probation imposed in two cases involving crimes of forgery and driving while barred.
> The court originally ordered that those terms run consecutively to one another, and the defendant has essentially consented to having probation revoked in those cases. This is the second time that the defendant has appeared back before the court after sentencing for probation revocation proceedings. And, of course, the violations that the defendant has admitted to having committed while on this probation are extremely serious violations of probation.
> The court initially placed Mr. Plettenberg on a street form of probation, and at the time of the first probation revocation proceeding, the court modified that and directed that the defendant complete a stay at a residential facility. And it appears that the defendant was at a residential facility for just a few days before he began to rack up violations. And then ultimately, he absconded from the facility within approximately a week's time.
> So the court agrees that revocation of the probation is inevitable and should be ordered.

In responding to the parties' arguments regarding concurrent/consecutive sentences, the court stated:

> The court has considered each of those arguments separately, and the court takes into account various factors, including the [Plettenberg's] age and his prior involvement with the criminal justice system. The criminal record that has been admitted into evidence shows Mr. Plettenberg has a history of antisocial behavior. It appears that he has contempt for authority figures and disregard for rights of others. His criminal history includes multiple felony convictions, assaultive behaviors, including a manslaughter conviction, prior escape and prior absence from custody.

One of the crimes to which Mr. Plettenberg has plead guilty now is Driving While Barred, which is what he was essentially on probation for in [a previous case], so clearly [Plettenberg] is a recidivist.

The court also considers the nature of these crimes and the circumstances under which they were committed. As noted with regard to the Escape, [Plettenberg] had been placed at a residential facility by court order and had fled from that facility within approximately a week's time. [Plettenberg] then engaged in a high-speed chase over significant sections of the city. The eluding events occurred around noontime, as I recall the police reports. [Plettenberg] engaged in extremely dangerous driving behavior. His conduct endangered a number of individuals. He drove through some fairly heavily-populated areas and heavily-traveled areas of town. And it is noted that the events occurred in the middle of the day.

The court is of the opinion that because of [Plettenberg's] history, his failures on probation and under community supervision, that his interests would be best addressed, and the protection of the community would be best addressed, by [Plettenberg] being incarcerated for the maximum term permissible. And the court believes that will aid in the [Plettenberg's] rehabilitation and also serve the interests of the community.

All of these statements indicate the court considered multiple and appropriate factors when making its sentencing decision, and we find no abuse of discretion in the district court's imposition of consecutive sentences in this case.

### IV. Conclusion.

For the foregoing reasons, we affirm Plettenberg's convictions, sentences, and the restitution orders concerning the patrol truck damages.

**AFFIRMED.**

McDonald, J., concurs; Tabor, J., partially dissents.

**TABOR, Judge.** (dissenting in part)

I respectfully dissent in part from the majority decision. For the same reasons outlined in *State v. Shears*, No. 16-1665, 2017 WL 6034626, at *2–3 (Iowa Ct. App. December 6, 2017) (Tabor, J., dissenting) (further review granted), I would find the district court erred in ordering Plettenberg to pay restitution in the amount of $1151 for damage to the Marshall County Sheriff's Department patrol truck.

Incorporated into the minutes of evidence was a report from Sergeant Ben Veren who was driving a marked patrol truck on March 9, 2016 when he decided to pursue the Chevy Malibu driven by Plettenberg for an expired registration sticker. After Plettenberg drove across the lawn of the Hawkeye Care Center, Sergeant Veren took the following action: "I attempted to slowly put my front push bumper against the passenger side of the car to pin the vehicle in place and prevent him from driving away." The sheriff's office later submitted a written estimate of $1151 in repair costs to the push bumper and lights from "That's My Truck" in Des Moines. The county attorney listed the sheriff's department as a victim and sought that amount of property damages in its statement of pecuniary loss to the court. The court ordered the defendant to pay $1151 to the sheriff's department as restitution.

Under these facts, Marshall County did not qualify as a "victim" for purposes of Iowa Code section 910.1(5) (defining victim as "a person who has suffered pecuniary damages as a result of the offender's criminal activities"). The statutory term "person" is broad enough to include a government entity like the sheriff's department. *See State v. Hagen*, 840 N.W.2d 140, 147 (Iowa 2013). But the

problem here is the sheriff did not suffer pecuniary damages *as a result* of Plettenberg's criminal activities.

"The words 'as a result of' in the definition of 'victim' clearly connote causation." *State v. Starkey*, 437 N.W.2d 573, 574 (Iowa 1989) (citation omitted). The restitution chapter defines "criminal activities" as any crime for which there is a plea of guilty or a verdict of guilty, or is admitted by the offender, whether or not prosecuted. Iowa Code § 910.1(1). Pecuniary damages include "all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event." *Id.* § 910.1(3).

Plettenberg pleaded guilty to criminal mischief related to driving across the care center's lawn. The State did not charge him with criminal mischief related to the patrol truck, likely because it could not prove he intentionally damaged the truck's bumper that, in fact, pushed into his car. *See id.* § 716.1; *State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998) (requiring State to prove defendant intended to cause damage). Nevertheless, the statement of pecuniary damages listed the cost of repairing the patrol truck. Those repairs were necessitated by Sergeant Veren's decision to pin Plettenberg's car against the curb and not by the criminal activities to which Plettenberg pleaded guilty.

The State contends damage to the patrol truck was reasonably related to Plettenberg's criminal activity. I disagree. "The damage must have been caused by *the offender's criminal act* to justify the restitution order." *State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct. App. 1995) (discussing similarity between tort element of proximate cause and causal connection necessary for restitution award) (emphasis added). The legal or proximate cause test is now analyzed as "scope

of liability." *See Thompson v. Kaczinski,* 774 N.W.2d 829, 837–39 (Iowa 2009) (adopting concept from Restatement (Third) of Torts: Liability for Physical & Emotional Harm ch. 6, Special Note of Proximate Cause, § 27 cmt. j, § 29 cmt. b (Am. Law Inst. 2010) [hereinafter Restatement Third]). The question is whether Sergeant Veren's decision to use his truck to push Plettenberg's car was within the "scope of liability" for Plettenberg's criminal conduct. *See In re J.S.*, No. 13-0174, 2013 WL 5291959, at *5 (Iowa Ct. App. Sept. 18, 2013) (holding officer's torn hamstring was not within the scope of liability of a juvenile delinquent's act of running from officer after being told to stop). Applying the "risk standard" from the Restatement Third, I would find the truck's damage fell outside the scope of the risk taken by Plettenberg when he fled from authorities. *See* Restatement Third § 34 cmt. g ("When the harm that occurs arises from a risk other than one that was among those that made the actor's conduct tortious, the actor is not liable.").

In this case, it was not Plettenberg's criminal conduct but the sergeant's strategy to disrupt those activities that resulted in the damage. Law enforcement agencies generally are not compensated for the public money they spend in performing their basic functions of investigating and solving crimes. *See People v. Ford*, 49 N.E.3d 954, 959 (Ill. Ct. App. 2016). But an agency may receive restitution for its loss if, for example, "a person commits criminal damage to property by destroying a police department squad car." *Id.* (collecting cases, including *Dillon*, 637 P.2d at 608, cited by the majority). The difference between our instant facts and *Ford*, *Dillon*, and the other collected cases is that Plettenberg did not drive into the patrol truck. It drove into him. The definition of a victim embraces a notion of "passivity, where the harm or loss suffered is generally

unexpected and occurs without the voluntary participation of the person suffering the harm or loss." *See Igbinovia v. State*, 895 P.2d 1304, 1308 (1995) (holding police department which expended money in drug-buying operation to obtain evidence against defendant was not "victim" within meaning of statute). I would reverse the restitution order for the patrol truck. I concur with the majority on all other points.